IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No.**

JUSTIN MARK BOISE, individually and on
behalf of all others similarly situated,
Plaintiff

v.

ACE USA, INC.,
Defendant

_____/

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW, JUSTIN MARK BOISE ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant ACE USA, INC. ("Defendant"), to stop Defendant's practice of making illegal telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

### INTRODUCTION

1. Plaintiff brings this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' cellular and residential telephones that are registered on the National Do-Not-Call Registry.

2. Defendant made more than one unauthorized call to Plaintiff's residential line for the purpose of marketing insurance products to Plaintiff. Plaintiff did not have an existing

business relationship with Plaintiff, Plaintiff did not seek information about Defendant's products, Plaintiff never provided express written consent to be called by Defendant, and the calls were an invasion of Plaintiff's privacy. Indeed, Plaintiff has been a member of the National Do-Not-Call Registry, authorized by the TCPA, since October 10, 2006, in order to prevent persistent and harassing marketing calls to his telephone.

3.     The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

4.     Plaintiff JUSTIN MARK BOISE is a natural person and citizen of Hialeah, Florida.

5.     Defendant ACE USA, INC. is a corporation organized under the laws of the State of Delaware. Defendant maintains its principle place of business in Pennsylvania at 436 Walnut Street, Philadelphia, Pennsylvania 19106. Defendant may be served with process by serving its registered agent, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers,

directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8. The Court has personal jurisdiction over Defendant because Defendant formulated, directed, implemented, and ratified a nation-wide telemarketing scheme designed to target and contact persons in this jurisdiction. Plaintiff and members of the proposed class would not have suffered an injury but for Defendant's forum-related conduct. Furthermore, exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice..

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendants. Furthermore, the Plaintiff Class consists of at least one hundred members.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

13. The TCPA also authorizes regulations that led to the implementation of what is widely known as the National Do-Not-Call Registry ("DNC"). The Federal Trade Commission (FTC) amended the Telemarketing Sales Rule (TSR) to give consumers a choice about whether they want to receive most telemarketing calls. As of October 1, 2003, it became illegal for most telemarketers or sellers to call a number listed on the DNC. The DNC applies to any plan, program, or campaign to sell goods or services through interstate phone calls. This includes telemarketers who solicit consumers, often on behalf of third party sellers. It also includes sellers who provide, offer to provide, or arrange to provide goods or services to consumers in exchange for payment.

14. The DNC does not limit calls by political organizations, charities, or telephone surveyors. A telemarketer or seller may call a consumer with whom it has an established business relationship for up to 18 months after the consumer's last purchase, delivery, or payment—even if the consumer's number is on the DNC. In addition, a company may call a consumer for up to three months after the consumer makes an inquiry or submits an application to the company. And if a consumer has given a company express written permission, the company may call even if the consumer's number is on the DNC. However, if a consumer asks a company not to call, the company may not call, even if there is an established business

relationship. Indeed, a company may not call a consumer—regardless of whether the consumer's number is on the registry—if the consumer has asked to be put on the company's own do not call list.

## COMMON FACTUAL ALLEGATIONS

15. Defendant provides commercial and personal property and casualty insurance, personal accident and supplemental health insurance, reinsurance and life insurance to a diverse group of clients.[1] Unfortunately for consumers, Defendant utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their services. Defendant obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

16. In Defendant's overzealous attempt to market their services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the DNC. Consumers place their phone numbers on the DNC for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

17. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

---

[1] www.acegroup.com

## FACTS SPECIFIC TO PLAINTIFF JUSTIN BOISE

18.     Over eight years ago, on or about October 10, 2006, Plaintiff registered his residential phone number ending in 3488 with the National Do Not Call Registry.

19.     On or around March 6, 2015 at 5:28 p.m., Plaintiff received a call on his residential telephone from the phone number (855) 287-9329.

20.     On or around March 11, 2015 at 5:11 p.m., Plaintiff received a second call on his residential telephone from the phone number (855) 287-9329.

21.     Plaintiff received both calls described above on his residential telephone assigned a number ending in 3488.

22.     Although his number is registered on the DNC, Plaintiff receives a large volume on telemarketing calls to his residential line.  Because the calls are intrusive and unwanted, Plaintiff typically allows his answering system to pick up calls from numbers Plaintiff does not recognize.

23.     Plaintiff did not recognize the telephone number above as each call was incoming. Suspecting the caller was a telemarketer, Plaintiff allowed his answering system to pick up the call.

24.     After the system prompted the caller to leave a message, the caller was silent before Plaintiff heard clicks.  The caller ultimately disconnected the call without leaving a message.

25.     Because of his past experience, and given the circumstances of the call, it was obvious to Plaintiff that the caller used an automatic dialing system to call his phone.  Plaintiff was annoyed by the calls, so he entered the caller's number into an internet search engine in order to identify the caller.

26. Plaintiff's internet search confirmed the number that called him belonged to Defendant. Plaintiff also noticed several complaints on internet websites about Defendant's incessant telemarketing practices.

27. Plaintiff learned that the purpose of Defendant's calls was to sell property insurance to homeowners.

28. Because Plaintiff did not want to receive any more calls from Defendant, Plaintiff called Defendant using the number from which he had received the incoming calls.

29. Plaintiff was instantly greeted by a pre-recorded voice, which stated, "[t]hank you for calling ACE USA, the leading provider of specialty insurance products…" The automated system then provided a menu from which Plaintiff could make a selections related to claims.

30. Plaintiff simply wanted the calls to stop and did not believe the automated system would be helpful to achieve that end. Therefore, Plaintiff disconnected the call while the pre-recorded voice was reciting menu options.

31. At the time of the calls, Plaintiff did not have a business relationship with Defendant.

32. Plaintiff was annoyed by the calls and wanted Defendant to stop calling.

33. It was obvious to Plaintiff that Defendant wass engaged in a marketing campaign wherein Defendant contacted a large number of consumers using an autodialer.

34. On information and belief, Defendant's ATDS called Plaintiff on both occasions.

35. Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff.

36. Plaintiff is the exclusive user of the telephone assigned the number ending in 3488.

37. Plaintiff did not provide Defendant with prior express written consent to call his telephone.

38. Plaintiff has reason to believe Defendant has called, and continues to call, thousands of residential and wireless telephone customers to market its products and services.

39. Plaintiff's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

40. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to wireless and residential phones.

41. On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.   CLASS ALLEGATIONS**

42. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following classes defined as follows (the "Class"):

> **"DNC[2] Class":** All individuals in the United States who within the applicable statute of limitations: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

44. This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

45. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

46. Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their residential and cellular telephones which were previously registered on the DNC for the purpose of preventing such calls, thereby invading the privacy of Plaintiff and the Class members.

**B.    NUMEROSITY**

47. The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

48. On information and belief, Defendant made telephone calls to thousands of

consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

### C.   COMMONALITY AND PREDOMINANCE

49. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

50. Common questions for the Class include, but are not necessarily limited to the following:

- (a) Whether Defendant's conduct violated the TCPA and 47 C.F.R. § 64.1200;
- (b) Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;
- (c) Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;
- (d) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and
- (e) Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

### D.   TYPICALITY

51. Plaintiff's claims are typical of the claims of the other members of the Class.

52. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

### E.   ADEQUATE REPRESENTATION

53. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

54. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

F. **POLICIES GENERALLY APPLICABLE TO THE CLASS**

55. This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

56. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

G. **SUPERIORITY**

57. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

58. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

59. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

60. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

61. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TCPA, 47 U.S.C. § 227**
**("DNC Claim" On behalf of Plaintiff and the Class)**

62. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

63. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

64. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

65. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

66. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to

receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

67. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

68. Defendant made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a record of consent to place telemarketing calls to them.

69. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

70. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

72.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

73.     Plaintiff is entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

## JURY DEMAND

74.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Mark Boise, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel HUGHES ELLZEY, LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227;

(c)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227;

(d)     An injunction requiring Defendant and its agents to cease all unsolicited

       telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227;

  (e) Pre-judgment and post-judgment interest on monetary relief;

  (f) An award of reasonable attorneys' fees and court costs; and

  (g) All other and further relief as the Court deems necessary, just, and proper.

Dated: April 1, 2015.

             Respectfully Submitted,

             */s/ Benjamin H. Crumley*
             Benjamin H. Crumley, Esq.
             Florida Bar No. 18284
             CRUMLEY & WOLFE, PA
             2254 Riverside Avenue
             Jacksonville, Florida 32204
             Telephone (904) 374-0111
             Facsimile (904) 374-0113
             Email: ben@cwbfl.com

W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Pro Hac Vice admission will be requested)*

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**