IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 15-Civ-21264-COOKE/TORRES

JUSTIN MARK BOISE, individually and on
behalf of all others similarly situated,
Plaintiff

v.                                                                                    CLASS ACTION

ACE AMERICAN INSURANCE
COMPANY, and ACE USA, INC.,
Defendants
_____/

# PLAINTIFF'S MOTION FOR AND MEMORANDUM OF IN SUPPORT OF CLASS CERTIFICATION AND TO STAY BRIEFING PENDING COMPLETION OF DISCOVERY

Plaintiff Justin Mark Boise ("Plaintiff"), by and through counsel, submits this Motion for Class Certification and, as detailed below, asks the Court to certify the class defined herein, appoint Plaintiff as Class Representative, and appoint his attorneys as Class Counsel. Plaintiff seeks certification of the following class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3):

> **"DNC[1] Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendants within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendants have no record of consent to place such calls.

Plaintiff files this motion at this early stage of the litigation in order to avoid being "picked off" through a Rule 68 offer or individual settlement offer. *See e.g. Damasco v. Clearwire Corp.*,

---

[1] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

662 F.3d 891 (7th Cir. 2011).[2] A rule allowing the named plaintiff to be "picked off" by making an offer of judgment would frustrate the objective of the statute and the purpose of its collective action provision. *See Stein v. Buccaneers Ltd. Partnership,* 772 F.3d 698 (11th Cir. 2014). Plaintiff respectfully requests this Court stay briefing on the motion and provide Plaintiff with sufficient time for discovery to further support and supplement this motion.[3] As detailed below, all of the prerequisites for maintaining a class action—numerosity, commonality, typicality, and adequacy—are met. *See* Fed. R. Civ. P. 23(a).

## I.     INTRODUCTION

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits any non-emergency call to a cellular telephone that is made using an "automatic telephone dialing system" ("ATDS") or "artificial or prerecorded voice" without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). While the statute imposed restrictions on a wide set of telemarketing practices, its strictest provisions recognize the uniquely personal nature of the cellular telephone, and the impersonal nature of robocalls. Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone

---

[2] Again, the present motion is being filed solely to prevent any individual "buy off" of the putative class representative. *See generally, Boles v. Moss Codilis, LLP*, SA-10-CV-1003-XR, 2011 WL 4345289 (W.D. Tex. Sept. 15, 2011); *cf. Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978) (declaring that the "notion that a Defendants may short-circuit a class action by paying off the class representatives…deserves short shrift.").

[3] Plaintiff's counsel is aware of Local Rule CV-23 governing motions for class certification requiring disclosure of specific information enumerated in Appendix A of the Local Rules. Plaintiff and his counsel have made their best efforts to include all the required information in this motion; and they will amend this motion after completing discovery to ensure compliance with Local Rule CV-23.

service[.]" *Id*. Section C of the TCPA establishes the National Do Not Call Registry and prohibits unsolicited marketing calls to individuals registered with that system.

On February 15, 2012, the FCC issued an order changing the express consent standard required for commercial entities to send prerecorded or text solicitations or predictive-dialed calls to cell phones. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 27 FCC Rcd 1830 (Feb. 15, 2012) *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-12-21A1.pdf.

Effective October 16, 2013, calls or texts to cell phones which introduce an advertisement, or constitute telemarketing, sent using an automated telephone dialing system ("ATDS") are allowed only with the prior express written signed consent of the recipient. Telemarketing calls include live or prerecorded calls placed with a predictive dialer and text messages to consumers and businesses. *Id*. at ¶ 25.

The TCPA provides consumers a choice as to whether robocallers may contact them on cell phones, and contains a blanket prohibition against the use of a prerecorded voice or ATDS for any call to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). These prohibitions are the subject of the allegations in Plaintiff's Class Action Complaint ("CAC"), based on the private right of action for damages and injunctive relief available under Section 227(b)(3) of the TCPA.

In his CAC, Plaintiff alleges that ACE AMERICAN INSURANCE COMPANY, and ACE USA, INC., ("Defendants"), or some person on their behalf, made non-emergency calls using an ATDS and prerecorded voice to Plaintiff's cellular telephone without his prior express written consent. *See* CAC (Dkt. No. 1). The Plaintiff has reason to believe that hundreds of thousands of

other consumers, similarly situated, received virtually identical illegal telemarketing calls from Defendants, or from telemarketers working for Defendants.

The FCC, in its role as the agency charged by Congress with interpreting the TCPA and promulgating regulations for its implementation and enforcement, has held, "a seller…may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers[.]" *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, para. 1 (2013) ("*FCC DISH Ruling*"). These principles extend beyond classical agency, and can include, for example, apparent authority or ratification.[4] *Id*. at 6586, para. 34. Certification of the Class is essential to allow consumers who have suffered the aggravation and invasion of privacy that comes with the receipt of such unsolicited advertising to obtain redress, and to discourage such invasive and illegal practices in the future.

## II.     RELEVANT FACTS

Over eight years ago, on or about October 10, 2006, Plaintiff registered his residential phone number ending in 3488 with the National Do Not Call Registry.  On or around March 6, 2015 at 5:28 p.m., Plaintiff received a call on his residential telephone from the phone number (855) 287-9329.  On or around March 11, 2015 at 5:11 p.m., Plaintiff received a second call on his residential telephone from the phone number (855) 287-9329.  Plaintiff received both calls described above on his residential telephone assigned a number ending in 3488.

---

[4] *See Id*. at 6592, para. 46 (giving examples of evidence supporting liability, such as the ability of the third party to "enter consumer information into the seller's sales or customer systems…[or] use the seller's trade name, trademark and service mark[,]" or "that the seller approved, wrote or reviewed the outside entity's telemarketing scripts…[or] knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct").

Although his number is registered on the DNC, Plaintiff receives a large volume on telemarketing calls to his residential line. Because the calls are intrusive and unwanted, Plaintiff typically allows his answering system to pick up calls from numbers Plaintiff does not recognize. Plaintiff did not recognize the telephone number above as each call was incoming. Suspecting the caller was a telemarketer, Plaintiff allowed his answering system to pick up the call.

After the system prompted the caller to leave a message, the caller was silent before Plaintiff heard a series of clicks. The caller ultimately disconnected the call without leaving a message. Because of his past experience, and given the circumstances of the call, it was obvious to Plaintiff that the caller used an automatic dialing system to call his phone. Plaintiff was annoyed by the calls, so he entered the caller's number into an internet search engine in order to identify the caller.

Plaintiff's internet search confirmed the number that called him belonged to Defendants. Plaintiff also noticed several complaints on internet websites about Defendants' incessant telemarketing practices. Plaintiff learned that the purpose of Defendants' calls was to sell property insurance to homeowners. Because Plaintiff did not want to receive any more calls from Defendants, Plaintiff called Defendants by dialing the number from which he had received the incoming calls. Plaintiff was instantly greeted by a pre-recorded voice, which stated, "[t]hank you for calling ACE USA, the leading provider of specialty insurance products…" The automated system then provided a menu from which Plaintiff could make a selections related to claims. Plaintiff simply wanted the calls to stop and did not believe the automated system would be helpful to achieve that end. Therefore, Plaintiff disconnected the call while the pre-recorded voice was reciting menu options.

At the time of the calls, Plaintiff did not have a business relationship with Defendants. Plaintiff was annoyed by the calls and wanted Defendants to stop calling. It was obvious to Plaintiff that Defendants were engaged in a marketing campaign wherein Defendants contacted a large number of consumers using an autodialer. On information and belief, Defendants' ATDS called Plaintiff on both occasions.

Plaintiff understood the purpose of Defendants' calls was to solicit business from Plaintiff. Plaintiff is the exclusive user of the telephone assigned the number ending in 3488. Plaintiff did not provide Defendants with prior express written consent to call his telephone. Plaintiff has reason to believe Defendants have called, and continue to call, thousands of residential and wireless telephone customers to market its products and services. Plaintiff's overriding interest is ensuring Defendants cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

## III.     ARGUMENT & AUTHORITIES

### A.     Hybrid Class Certification Under Rules 23(b)(2) and (b)(3) Should Be Granted

On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees. Specifically, Plaintiff seeks a hybrid class certification pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3). The TCPA permits injunctive relief as well as statutory damages.

#### 1.     Rule 23(b)(2)

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b). An order prohibiting Defendants from making unsolicited calls to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message would resolve the Plaintiff's complaint in terms of injunctive relief. Moreover, Plaintiff and each Class member were harmed in the same manner, and may continue to be harmed, in the absence of an injunction, because Defendants would otherwise be free to continue their illegal practice of making unsolicited calls to cell phones without prior express consent, in violation of the TCPA. *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2361, 185 L. Ed. 2d 1068 (U.S. 2013) (affirming preliminary injunction in TCPA class action).

Plaintiff's requested remedy is the appropriate remedy for a class action under Rule 23(b)(2), which "applies only when a single injunction or declaratory judgment would provide relief to each member of the class," based upon Defendants' common practice of transmitting wireless spam to consumers' cell phones without prior express consent. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Therefore, class certification under Fed. R. Civ. P. 23(b)(2) is necessary and appropriate here.

  **2.**  **Rule 23(b)(3)**

Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23; *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law or fact

amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

**B.     Numerosity.**

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  Generally, the numerosity requirement is not met with numbers fewer than 21, but is satisfied when the class comprises 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), cert. denied, 479 U.S. 853 (1986). Numerosity in this case is easily satisfied. While the precise number and identity of class members will be obtained through Plaintiff's formal discovery efforts, the information obtained to date is sufficient to satisfy Rule 23(a)(1)'s numerosity requirement.

**C.     Commonality.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To meet the commonality requirement, the plaintiff must demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality may be shown when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Dukes*, 131 S. Ct. at 2545, 2556.  Here,

the commonality test is met because the Defendants engaged in a general policy that is the focus of the litigation by making unsolicited calls to Plaintiff's and other class members' cellular telephones without prior express consent.

### D.     Typicality.

Typicality requires that Plaintiff's claims be typical of other Class members. Fed. R. Civ. P. 23(a)(3). The typicality inquiry focuses on the similarity between the named Plaintiff's legal and remedial theories and the theories of those whom they purport to represent. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).  The purpose of the typicality requirement is to ensure that the representative's interest is "aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996); *see also In re Ford Motor Co. Bronco II*, 177 F.R.D. 360, 366–67 (E.D. La. 1997) (noting that purpose of typicality element is to ensure that interests of absent class members are protected).  Thus, the requirement is satisfied where, in proving his own case, the representative's "claims have the same essential characteristics" as those of the Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated in part by, Wal–Mart, supra, as recognized in M.D. ex rel. Stukenberg*, 675 F.3d 832, 839–40 (5th Cir. 2012).  Finally, "a finding of commonality will ordinarily support a finding of typicality." *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting how the requirements of commonality and typicality "merge").

Here, Plaintiff's claims are typical of those of class members. All claims arise out of the same legal theories, as typicality requires. Like class members, Plaintiff received unsolicited calls from Defendants on his cell phone promoting Defendants' products or services in alleged violation

of the TCPA. Like class members, individualized inquiry into the nature of Defendants' calls, the degree of intrusion into the affairs of class members, or other details beyond the fact of the phone calls themselves, is not required to establish the TCPA violation, and therefore is not relevant. The typicality requirement is met.

E.     **Adequacy of Representation.**

Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet Rule 23 requirements [for adequate representation], the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). The "long-established standard" for the adequacy determination on which the Fifth Circuit principally relies requires "an inquiry into [1] the zeal and competence of the representative[s'] counsel and…[2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Plaintiff has no conflicting interests with class members. In fact, by investigating, filing, and vigorously pursuing this case, Plaintiff has demonstrated a desire and ability to protect class members' interests. Plaintiff has elected not to pursue solely his individual claims in this matter, but instead is prosecuting the case on behalf of a class of persons who, like his, have been subjected to unlawful telemarketing.

Plaintiff's counsel are experienced in consumer class action lawsuits, and have regularly engaged in major class litigation. Plaintiff's counsel have been appointed as class counsel in

several class actions in the United States. "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). Accordingly, Plaintiff and his counsel will adequately represent the Class.

F.   **The Proposed Class Satisfies Fed. R. Civ. P. 23(b)(3).**

A class action may be maintained under Rule 23(b)(3) if all Rule 23(a) requirements are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[5] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-616 (1997) (addressing predominance and superiority requirements). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623.

1.   **Predominance.**

"[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008). In fact, common legal and factual issues have been found to predominate where the class members' claims arose under the TCPA and where the claims focused on the Defendants's advertising campaign. *Kavu, Inc. v. Omnipak Corp.*, 246

---

[5] Pertinent matters include: (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

F.R.D. 642, 650-51 (W.D. Wash. 2007); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959, 2010 WL 4931001, at *3 (N.D. Ill. Nov. 29, 2010).

All claims in this case arise under the same federal statute, all involve the same elements of proof, and all involve the same alleged misconduct. The predominate questions in this case—the answers to which will be dispositive of the Plaintiff and the Class members' claims alike—include whether Defendants is liable for making unauthorized calls advertising its goods and services, whether Defendants' calls to wireless phones and to members of the National Do Not Call Registry violate 47 U.S.C. § 227, whether the members of the Class are entitled to treble damages because Defendants willfully engaged in a marketing campaign that violated the TCPA. The answers to these questions, win or lose, will decide the outcome of the entire case. Furthermore, given the FCC's recent expansion of the TCPA simplifies the Court's analysis – if the Defendants does not possess proof of *written* consent by a contacted consumer, that consumer would qualify as a member of the class.

As the Seventh Circuit recently held, '[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given [communication] is an advertisement, are common to all recipients. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied*, 134 S. Ct. 1318 (U.S. 2014) (emphasis added). This case depends upon the answer to these "main" questions. Each Class members' claim will rise or fall on whether Defendants can be held liable for the unsolicited calls to Plaintiff's and other class members' cellular telephones, and Defendants' liability will be established solely by examining the conduct of Defendants, not the actions of any Class members.  Predominance is satisfied.

## 2. **Superiority.**

Finally, the class action is superior to any other method available to fairly and efficiently adjudicate the Class members' claims. The "superiority analysis" of Rule 23(b)(3) "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007). Class actions are particularly appropriate where, as here, "it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

The TCPA, its allocation of statutory damages in an amount not to exceed $1,500, and its lack of a mechanism to award attorneys' fees, effectively means it is not economically viable for class members to pursue claims against Defendants on an individual basis. This consideration is particularly compelling here. As the United States Supreme Court has stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual action to bring a solo action prosecuting his or his rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.*, 521 U.S. at 609 (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Many decisions recognize the benefits of class certification in cases involving small

individual recoveries, in the context of consumer cases generally,[6] and TCPA cases in particular.[7] The overriding justification for certification of these claims is compelling, and applies with equal force here:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied.

*In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977); *Knutson v. Schwan's Home Service, Inc.*, 2013 WL 4774763 (S.D.Cal. Sept. 5, 2013) ("Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA, see 47 U.S.C. § 227(b)(3), the Court finds a class action would achieve Plaintiff's objective better than if class members were required to bring individual actions."); *see also Brown v. Kelly*, 244 F.R.D. 222, 238-39 (S.D.N.Y. 2007), *aff'd in part, vacated in part*, 609 F.3d 467 (2d Cir. 2010). For all these reasons, the class action device is the superior means of resolving this case.

---

[6] *See, e.g., Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) ("Such a small possible recovery [of approximately $125] would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute."), *cert denied*, 129 S. Ct. 608 (2008); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D. N.Y. 2009); *Drossin v. National Action Fin. Servs., Inc.*, 255 F.R.D. 608, 617 (S.D. Fla. 2009); *Del Campo v. American Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 597 (N.D. Cal. 2008); *In re Farmers Inc. Co. FCRA Litig.*, 2006 WL 1042450, *11 (W.D. Okla. April 13, 2006).

[7] Many federal courts have certified TCPA actions. *See e.g., Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 565-572 (W.D. Wash. 2012); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 2012 WL 3027953 (W.D. Mich. July 24, 2012), *appeal denied*, 2013 U.S.App. LEXIS 4176 (6th Cir. 2013); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 330-339 (E.D. Wis. 2012, *affirmed* 704 F.3d 389 (7th Cir. 2013); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012); *Siding & Insulation Co. v. Combined Ins. Group, Ltd.*, No. 1:11 CV 1062, 2012 WL 1425093 (N.D. Ohio Apr. 23, 2012).

## CONCLUSION

For the reasons discussed above, the requirements of Rule 23 are satisfied. Therefore, Plaintiff Justin Mark Boise respectfully requests the Court enter an order certifying the proposed Class pursuant to Rules 23(b)(2) and (b)(3), appointing his attorneys as Class Counsel, and awarding such additional relief as the Court deems reasonable and just.

Dated:  May 20, 2015.

                                                          Respectfully Submitted,

                                                           */s/ Benjamin H. Crumley*
                                                          Benjamin H. Crumley, Esq.
                                                          Florida Bar No. 18284
                                                          CRUMLEY & WOLFE, PA
                                                          2254 Riverside Avenue
                                                          Jacksonville, Florida 32204
                                                          Telephone (904) 374-0111
                                                          Facsimile (904) 374-0113

    W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Pro Hac Vice admission will be requested)*

**ATTORNEYS FOR PLAINTIFF**
**AND THE PROPOSED CLASS**

## **CERTIFICATE OF SERVICE**

      I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Southern District of Florida, Miami Division, on <u>May 20, 2015</u>, and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.

                                                            */s/ Benjamin Crumley*
                                                            Benjamin Crumley