# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 15-21264-Civ-COOKE/TORRES

JUSTIN MARK BOISE, individually and on
behalf of all others similarly situated,

     *Plaintiff*,

v.

ACE AMERICAN INSURANCE COMPANY
and ACE USA, INC.,

     *Defendants*.                /

---

### PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION
### TO DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
### <u>MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY</u>

TO THE HONORABLE MARCIA G. COOKE:

     COMES NOW Justin Mark Boise ("Plaintiff"), individually and on behalf of all others

similarly situated, and files this Response in Opposition to the Motion to Dismiss (Dkt. No. 29)

filed by Defendant Ace American Insurance Company ("AAIC" or "Defendant").

| | |
|---|---|
| W. Craft Hughes (*pro hac vice*) | Benjamin H. Crumley, Esq. |
| Jarrett L. Ellzey (*pro hac vice*) | Florida Bar No. 18284 |
| HUGHES ELLZEY, LLP | CRUMLEY & WOLFE, PA |
| 2700 Post Oak Blvd., Suite 1120 | 2254 Riverside Avenue |
| Houston, TX 77056 | Jacksonville, FL 32204 |
| Phone (713) 554-2377 | Phone (904) 374-0111 |
| Facsimile (888) 995-3335 | Facsimile (904) 374-0113 |
| | |
| | ATTORNEYS FOR PLAINTIFF |
| | AND THE PUTATIVE CLASS |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION & SUMMARY OF RESPONSE .......................................................... 1

II.   FACTS .......................................................................................................................... 4

III.  ARGUMENT & AUTHORITIES ................................................................................. 6

    A.   Applicable Standard For Rule 12(b)(1) Motion ...................................................... 6

    B.   Plaintiff Has Article III Standing .......................................................................... 7

    C.   A Stay of This Case is Improper ............................................................................ 9

        i.    A Grant Of Certiorari Has No Precedential Significance ............................ 10

        ii.   Defendant Fails to Satisfy the Four Factors Necessary to Stay
           this Case ..................................................................................................... 10

    D.   AAIC's Offer Of Judgment Did Not Moot Plaintiff's Claim ................................ 12

        i.    *Genesis* is Distinguishable and Inapplicable to Rule 23 Class
           Actions ...................................................................................................... 13

        ii.   Courts Have Routinely Rejected Defendants' Attempts To
           "Pick-Off" Individual Plaintiffs In A Class Action ...................................... 16

        iii.  A Rule 68 Offer Of Judgment In A Class Action Seriously
           Undermines The Purpose Of Rule 23 ......................................................... 17

IV.   CONCLUSION & PRAYER ....................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........................................................................ 11

*Alpern v. Utilicorp United, Inc.*,
84 F.3d 1525 (8th Cir. 1996) ......................................................................... 19

*Campbell-Ewald Co. v. Gomez*,
No. 14-857, 2015 WL 246885 (U.S. May 18, 2015)....................................... 1, 9

*Colorado River Water Conservation Dist. v. U.S.*,
424 U.S. 800 (1976)......................................................................................... 10

*CTI–Container Leasing Corp. v. Uiterwyk Corp.*,
685 F.2d 1284 (11th Cir.1982) ....................................................................... 12

*Damasco v. Clearwire Corp.*,
662 F.3d 891 (7th Cir. 2011) ............................................................................ 4

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
445 U.S. 326 (1980).................................................................................... 7, 18

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013)............................................................................... 13, 15

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
779 F.3d 1275 (11th Cir. 2015) .................................................................. 1, 10

*Greisz v. Household Bank, N.A.*,
176 F.3d 1012 (7th Cir. 1999) ........................................................................ 19

*Hermida v. Archstone*,
950 F. Supp. 2d 298 (D. Mass. 2013) .............................................................. 13

*Hilton v. Braunskill*,
481 U.S. 770 (1987)......................................................................................... 11

*Hines v. D'Artois*,
531 F.2d 726 (5th Cir. 1976) .......................................................................... 12

*In re Consumers Power Co. Sec. Litigation*,
105 F.R.D. 583 (E.D. Mich. 1985) .................................................................. 18

## **TABLE OF AUTHORITIES**
### (continued)

**Page(s)**

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*,
880 F. Supp. 2d 689 (D. Md. 2012) ...................................................................... 7

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .................................................................... 10, 11, 12

*Lusardi v. Xerox Corp.*,
975 F.2d 964 (3rd Cir.1992) ................................................................ 6

*Martin v. Mabus*,
734 F. Supp. 1216 (S.D. Miss. 1990) .................................................. 19

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*,
781 F.3d 1245 (11th Cir. 2015) ........................................................ 3, 8

*Phillips Petroleum v. Shutts*,
105 S. Ct. 2965 (1985) ...................................................................... 18

*Ritter v. Thigpin*,
828 F.2d 662 (11th Cir. 1987) ....................................................... 1, 10

*Roper v. Consurve, Inc.*,
578 F.2d 1106 (5th Cir. 1978) ..................................................... 18, 19

*Rutherford v. McDonough*,
466 F.3d 970 (11th Cir. 2006) ..................................................... 1, 10

*Schwab v. Sec'y, Dep't of Corr.*,
507 F.3d 1297 (11th Cir. 2007) .................................................... 1, 10

*Smith v. NCO Financial Systems, Inc.*,
257 F.R.D. 429 (E.D. Pa. 2009) ......................................................... 19

*Sosna v. Iowa*,
95 S. Ct. 553 (1975) ......................................................................... 6, 7

*Spokeo, Inc. v. Robins*,
135 S. Ct. 1892 (2015) ....................................................................... 1, 9

*Stein v. Buccaneers Ltd. P'Ship*,
772 F.3d 698 (11th Cir. 2014) ...................................................... passim

iii

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

<u>Page(s)</u>

*United States Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980)...................................................................................................... 7

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)...................................................................................................... 8

*Warren v. Sessoms & Roger, P.A.*,
    676 F.3d 365 (4th Cir. 2012) ....................................................................................... 7

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................................ 11

*Zeidman v. J. Ray McDermott & Co., Inc.*,
    651 F.2d 1030 (5th Cir.1981) .................................................................................... 17

*Zeigenfuse v. Apex Asset Mgmt., L.L.C.*,
    239 F.R.D. 400 (E.D. Pa. 2006)................................................................................ 19

**<u>Statutes</u>**

47 U.S.C § 227............................................................................................................. 3, 4, 9

**<u>Rules</u>**

FED. R. CIV. P. 12(b)(1) ............................................................................................. passim

FED. R. CIV. P. 23 ...................................................................................................... passim

Fed. R. Civ. P. 68....................................................................................................... passim

## I.   INTRODUCTION & SUMMARY OF RESPONSE

In its motion to dismiss, Ace American Insurance Company ("Defendant" or "AAIC") asks this Court to readily ignore Eleventh Circuit precedent and stay this case pending the unknown outcome of the United States Supreme Court's decisions in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) and *Campbell-Ewald Co. v. Gomez*, No. 14-857, 2015 WL 246885 (U.S. May 18, 2015).[1] Defendant's motion to stay must be denied because, as the Eleventh Circuit Court of Appeals observed in an analogous legal context vacating a stay of execution issued by a district court based on a grant of certiorari by the Supreme Court in a different case:

> [T]he grant of certiorari on an issue does not suggest a view on the merits. We don't know how the Supreme Court is going to decide the issues on which it has granted review [ ], and the Supreme Court probably does not know given the fact that briefing has not even been completed in that case."

*Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007); *see also Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015) (stating that "[o]ur decision in *Schwab* is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari.") (emphasis added) (citations omitted).  A grant of certiorari by the Supreme Court does not change the law,[2] and merely granting certiorari does not constitute new law either.[3]  Less than two months ago in the Middle District of Florida (Tampa Division), U.S. District Judge Richard A. Lazzara denied a defendant's request to stay pending the outcome of *Spokeo* in an almost identical TCPA class action.[4]

---

[1] Def.'s Motion at pp. 2, 7-9 (Dkt. 29).
[2] *See Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006).
[3] *See Ritter v. Thigpin*, 828 F.2d 662, 665-66 (11th Cir. 1987).
[4] *Speer v. Whole Food Mkt. Group, Inc.*, 8:14-cv-03035-RAL, 2015 WL 2061665 (M.D. Fla. 2015) (Dkt. 46). For the Court's convenience, a copy of Judge Lazzara's Order is attached as Exhibit 1.

Similarly, in the present case, this Court should not assign any precedential significance to the fact the Supreme Court has merely granted certiorari in these cases which present similar issues relating to Plaintiff's Article III standing to bring this lawsuit not only on his own behalf but on behalf of those similarly situated to him. As in *Schwab*, this Court has no way of divining whether the Supreme Court will decide the *Spokeo* or *Gomez* cases in such a manner as to benefit the Defendant's position with regard to the Plaintiff's alleged lack of standing to pursue this case for himself and those similarly situated to him. Therefore, the Court should conclude a stay of this case is not warranted and Defendant's motion to stay must be denied pursuant to established Eleventh Circuit precedent.

Defendant AAIC also seeks dismissal of Plaintiff's First Amended Class Action Complaint ("FAC") pursuant to Rule 12(b)(1). Specifically, AAIC claims (1) Plaintiff lacks Article III standing for failing to allege any "actual, concrete injury-in-fact," and (2) Plaintiff's claims are moot because AAIC made on *offer* of judgment.[5] This same technical approach has been employed by countless defendants attempting to evade TCPA liability, yet it routinely fails.

In *Stein v. Buccaneers Ltd. Partnership*,[6] the Eleventh Circuit recently addressed the Rule 68 mootness issue and joined the majority of other circuits by holding an unaccepted Rule 68 offer of complete relief to the named plaintiff in a class action <u>does not moot the case</u>.  In the Third, Fifth, Ninth, and Tenth Circuits, a Rule 68 offer of full relief to the named plaintiff does not moot a class action, even if the offer precedes a class-certification motion, so long as the named plaintiff has not failed to diligently pursue class certification.[7] Furthermore, "the Supreme Court has made

---

[5] Def.'s Motion at pp. 1, 5-7.

[6] *Stein v. Buccaneers Ltd. P'Ship*, 772 F.3d 698 (11th Cir. 2014).

[7] *See Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011).

clear, more than once, that the necessary personal stake in a live class action controversy sometimes is present even when the named plaintiff's own individual claim has become moot."[8]

As to Article III standing, the Eleventh Circuit already resolved this issue in the context of a TCPA class action on March 9, 2015 in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*, holding the recipient of an illicit fax suffered an injury sufficient for Article III standing based solely on the invasion of a [TCPA] statutory right established by Congress.[9] The court expressly stated the "occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the [TCPA] statute and is sufficiently personal or particularized to Palm Beach Golf as to provide standing."[10] In the present case, Defendant illegally contacted Plaintiff on his telephone, which was previously registered on the DNC, thereby invading the privacy of Plaintiff. FAC at ¶ 47.

Any "person who has received more than one telephone call within any 12-month period" by or on behalf of the same entity in violation of the TCPA may bring a private action based on a violation of the TCPA, which was promulgated to protect telephone subscribers' privacy rights. *Id*. at ¶ 64 (emphasis added). The TCPA states "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the [DNC]." *Id*. at ¶ 65. The Defendant's violation of Plaintiff's privacy rights is among the injuries intended to be prevented by the TCPA and is sufficiently personal or particularized to Plaintiff as to provide standing in this case.

Specifically, Plaintiff registered his telephone number with the DNC for the express purpose of avoiding unwanted telemarketing calls like those alleged here. FAC at ¶¶, 17 and 19.

---

[8] *Stein v. Buccaneers Ltd. P'Ship*, 772 F.3d at 705.
[9] *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245 (11th Cir. 2015).
[10] *Id*. at 1252.

Defendant called Plaintiff's telephone without his prior written consent at least two times in March of 2015. *Id.* at ¶¶ 20-21, 37-38. By doing so, Defendant "invaded the personal privacy of Plaintiff and members of the putative class." *Id.* at ¶ 18. The calls were "intrusive and unwanted." *Id.* at ¶ 23. Plaintiff was "annoyed by the calls" and wanted Defendant to "stop calling." *Id.* at ¶¶ 26, 33.

The holdings in *Stein* and *Palm Beach* are binding precedent in the Eleventh Circuit. Therefore, this Court should deny Defendant's 12(b)(1) motion concerning Article III standing and mootness based on established Eleventh Circuit precedent directly addressing these issues.

## II.      FACTS

On April 23, 2015, Plaintiff filed his FAC against AAIC for violations of the TELEPHONE CONSUMER PROTECTION ACT ("TCPA")[11] on behalf of a putative class to stop Defendant's practice of making unsolicited calls to Plaintiff's and other class members' telephones that are registered on the DNC. FAC ¶ 1.  The TCPA permits private individuals to seek injunctive relief and recover an award of $500.00 in statutory damages for each and every violation,[12] and up to $1,500 for willful and knowing violations of the statute or its prescribed regulations.[13]  Plaintiff alleges Defendant violated the TCPA by illegally contacting Plaintiff on his telephone, which was previously registered on the DNC, thereby invading the privacy of Plaintiff. *Id.* at ¶ 47.

On May 20, 2015, Plaintiff filed his Motion For Class Certification (Dkt. #26) in accordance with the principles and holding in *Damasco v. Clearwire Corp.*[14]  Six days later on May 26, 2015, Defendant tendered an offer of judgment solely to Plaintiff pursuant to Rule 68 ("Defendant's Offer") and failed to offer any relief to the putative class members.  Defendant filed

---

[11] 47 U.S.C § 227, *et seq.*
[12] 47 U.S.C § 227(b)(3)(B).
[13] 47 U.S.C § 227(b)(3).
[14] *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011).

its Rule 12(b)(1) motion to dismiss and alternative request to stay May 29, 2015. Plaintiff's case is a putative class action brought under the TCPA on behalf of himself and the following class of similarly situated individuals:

> "All individuals in the United States who within the applicable statute of limitations: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls."

*See* FAC ¶ 43. The TCPA authorizes regulations that led to the implementation of the National Do Not Call Registry ("DNC"). *Id*. at ¶ 14. It's illegal for telemarketers or sellers to call a phone number listed on the DNC. *Id*. On or about October 10, 2006, Plaintiff took the time to register his phone number with the DNC. *Id*. at ¶ 19. Consumers place their phone numbers on the DNC for the express purpose of avoiding unwanted telemarketing calls like those alleged here. *Id*. at ¶ 17. Defendant called Plaintiff's telephone without his prior express written consent at least two times in March of 2015. *Id*. at ¶¶ 20-21, 37-38.

Defendant placed (and continues to place) repeated and unwanted calls to Plaintiff and consumers whose phone numbers are listed on the DNC. *Id*. By doing so, Defendant "invaded the personal privacy of Plaintiff and members of the putative class." *Id*. at ¶ 18. The calls are "intrusive and unwanted." *Id*. at ¶ 23. Plaintiff was "annoyed by the calls" and wanted Defendant to "stop calling." *Id*. at ¶¶ 26, 33. Defendant illegally contacted Plaintiff on his telephone, which was previously registered on the DNC, thereby invading the privacy of Plaintiff. *Id*. at ¶ 47.

Plaintiff did not want to receive any more calls from Defendant, so he called Defendant by dialing the number from which he had received the incoming calls. *Id*. at ¶ 29. Plaintiff was instantly greeted by a pre-recorded voice, which stated, "[t]hank you for calling ACE USA, the leading provider of specialty insurance products…" *Id*. at ¶ 30. Plaintiff wanted the calls to stop

and did not believe the Defendant's automated system would be helpful to achieve that end. *Id*. at ¶ 31. Plaintiff is the exclusive user of his telephone number, and did not provide Defendant with prior express written consent to call his telephone. *Id*. at ¶¶ 37-38. Defendant violated the TCPA by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the DNC. *Id*. at ¶ 68. Plaintiff's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates members of the class for invading their privacy in the manner the TCPA was contemplated to prevent. *Id*. at ¶ 40.

Defendant tendered an offer of judgment solely to Plaintiff pursuant to Rule 68 which *expressly excluded any class members* ("Defendant's Offer") *after* Plaintiff filed his Original Class Action Complaint, *after* Plaintiff filed his FAC, *after* Plaintiff filed his Statement of Claim, *after* Defendant filed its response to Plaintiff's Statement of Claim, and *after* Plaintiff filed a motion to certify the *class action*.[15]  Defendant fails to offer any relief to the putative class members.

## III.   ARGUMENT & AUTHORITIES

### A.   APPLICABLE STANDARD FOR RULE 12(b)(1) MOTION

Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies. "[S]pecial mootness rules apply in the class action context."[16] For example, when a class representative's claim is mooted after class certification, the Supreme Court has held federal courts retain jurisdiction over the class action.[17] The Supreme

---

[15] FED. R. CIV. P. 68; A copy of Defendant's Offer of Judgment is attached as Exhibit A to Defendant's Motion (Dkt. #29-1). Defendant's Offer specifically states: "This offer is intended to fully satisfy <u>Plaintiffs' individual claims</u> asserted in this action or which could have been asserted in this action." *See* Dkt. #29-1 at p. 2 (emphasis added).

[16] *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3rd Cir.1992).

[17] *Sosna v. Iowa*, 419 U.S. 393, 401 (1975).

Court has also held class representatives may proceed with an appeal on the class certification issue where a class certification has been denied and the class representative's individual claim has been resolved.[18]

When a defendant presents a Rule 68 offer of judgment to a plaintiff, the offer may in certain circumstances render a case moot.[19] Where relatively little time passes between filing a class complaint and a Rule 68 offer of judgment so that the named plaintiff has not yet moved for class certification, and where the maximum statutory fine is relatively small-thus making the claim susceptible to "pick-off" attempts, the "relation back" doctrine will apply and defeat claims of mootness.[20] Federal courts generally lack subject matter jurisdiction to consider moot claims. The U.S. Supreme Court has also recognized, however, this general rule is riddled with exceptions, particularly in the class action context.[21] Certification of a suit as a class action has important consequences, because certification is the time when "the class of unnamed persons described in the certification acquire [ ] a legal status separate from the interest asserted by [the named plaintiff]."[22] As a result, certification "significantly affects the mootness determination."[23]

### B.   PLAINTIFF HAS ARTICLE III STANDING

Defendant contends it is entitled to dismissal under Rule 12(b)(1) because Plaintiff did not suffer an injury-in-fact sufficient to confer Article III standing.  This is incorrect in light of Eleventh Circuit authority directly on point. In this case, Plaintiff suffered the requisite injuries

---

[18] *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 401–02, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332–33, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).
[19] *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012).
[20] *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 880 F. Supp. 2d 689 (D. Md. 2012).
[21] *See Sosna v. Iowa*, 419 U.S. 393, 402 n. 11, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975).
[22] *Id*. at 399.
[23] *Id*.

because (1) Defendant violated the rights Congress intended to be protected under the TCPA; and (2) Defendant's calls invaded Plaintiff's privacy.

The Eleventh Circuit resolved the question of standing in the context of a TCPA class action on March 9, 2015, holding a recipient of an illicit fax suffered an injury sufficient for Article III standing solely based on the invasion of a [TCPA] statutory right established by Congress.[24] In *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*, the plaintiff Palm Beach received an unsolicited fax advertisement from John G. Sarris, D.D.S. promoting the defendant's dental services.[25]  Palm Beach brought a class action suit under the TCPA, and the District Court granted summary judgment immediately after oral argument.  The District Court was moved by the fact the evidence showed no Palm Beach employee could recall seeing or printing the fax advertisement.  There was, however, evidence in the form of an expert report showing Palm Beach did actually receive a fax the defendant sent. In granting summary judgment for the defendant, the district court held Palm Beach lacked Article III standing because it could not demonstrate it suffered an injury-in-fact.

On appeal, Palm Beach argued the specific injury targeted by the TCPA is the sending of the fax and resulting occupation of the recipient's telephone line and fax machine, not that the fax was actually printed and read.  The Eleventh Circuit examined relevant authority on Article III standing—"generally, a legal interest sufficient to create standing 'must consist of obtaining compensation for, or preventing, the violation of a legally protected right.' "[26] Congress, however, may 'define new legal rights, which in turn will confer standing to vindicate an injury cause to the

---

[24] *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245 (11th Cir. 2015).
[25] *Id.* at 1248.
[26] *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d at 1251, citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772, 120 S.Ct 1858, 1862 (2000).

claimant.'"[27]   "Thus, where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights."[28]   <u>The Eleventh Circuit went on to reverse the district court</u>, holding the question of "whether Plaintiff actually received the facsimile is irrelevant to liability under the TCPA," and Palm Beach suffered an actual, cognizable, and personalized injury by receiving the fax advertisements.[29]

In the present case, Plaintiff suffered an "actual, cognizable, and personalized injury" the TCPA was designed to protect when Congress enacted it. Plaintiff registered his telephone number with the DNC for the express purpose of avoiding unwanted telemarketing calls like those alleged here. FAC at ¶¶, 17 and 19. Defendant called Plaintiff's telephone without his prior written consent at least two times in March of 2015. *Id*. at ¶¶ 20-21, 37-38. Plaintiff pled facts showing these calls invaded his privacy and were disruptive: Defendant "invaded the personal privacy of Plaintiff and members of the putative class." *Id*. at ¶ 18. The calls were "intrusive and unwanted." *Id*. at ¶ 23. Plaintiff was "annoyed by the calls" and wanted Defendant to "stop calling." *Id*. at ¶¶ 26, 33. These facts sufficiently allege actual injuries that are personal in nature (privacy rights violations), which is precisely the sort of injury Congress intended to prevent when it enacted the TCPA.[30]

### C.   A STAY OF THIS CASE IS IMPROPER

Defendant AAIC has alternatively moved for a stay of this case pending the unknown outcome of the United States Supreme Court's decisions in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) and *Campbell-Ewald Co. v. Gomez*, No. 14-857, 2015 WL 246885 (U.S. May 18, 2015).[31]

---

[27] *Id*. citing *Stevens* at 773.
[28] *Id*.
[29] *Id*.
[30] 47 U.S.C § 227, *et seq.*
[31] Def.'s Motion at pp. 2, 7-9 (Dkt. 29).

### i.   A Grant Of Certiorari Has No Precedential Significance

Plaintiff is mindful of "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."[32] Yet, AAIC's argument ignores binding Eleventh Circuit precedent holding "[t]he grant of certiorari on an issue does not suggest a view on the merits." *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007). In *Schwab*, the Eleventh Circuit recognized the problems and uncertainty associated with staying an entire case based solely on a grant of certiorari, stating "We don't know how the Supreme Court is going to decide the issues on which it has granted review [ ], and the Supreme Court probably does not know given the fact that briefing has not even been completed in that case." *Id.*; *see also Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015) (stating that "[o]ur decision in *Schwab* is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari.") (emphasis added) (citations omitted).

A grant of certiorari by the Supreme Court does not change the law,[33] and merely granting certiorari does not constitute new law either.[34] Furthermore, Defendant disregards the Supreme Court's admonishment that federal courts have a "virtually unflagging obligation," absent "exceptional circumstances," to exercise jurisdiction when a case is properly before the Court.[35] Plaintiff's present case is properly before the court, no exceptional circumstances exist to warrant a stay, and Defendant's request to stay this case must be denied pursuant to established Eleventh Circuit precedent.

### ii.   Defendant Fails to Satisfy the Four Factors Necessary to Stay this Case

---

[32] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).
[33] *See Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006).
[34] *See Ritter v. Thigpin*, 828 F.2d 662, 665-66 (11th Cir. 1987).
[35] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).

In deciding whether to issue a stay, a court must consider four factors: (1) whether the stay applicant has made a strong showing of likelihood of success on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.[36] Serious questions going to the merits—as opposed to likelihood of success—and a balance of hardships that tips sharply in the moving party's favor may also support issuance of a stay.[37]

Even if Defendant had demonstrated "serious questions going to the merits," which they have not, the remaining factors must tip *sharply* in Defendant's favor, and they do not. In its motion, Defendant fails to provide *any* argument or reference whatsoever to the second factor— irreparable harm to Defendant absent a stay. Plaintiff realizes significant resources are expended by all parties in the context of class action litigation, but litigation expenses alone are insufficient to establish irreparable harm. Moreover, the third factor favors moving forward in this litigation since Plaintiff will be prejudiced by a significant delay with unknown limits. Memories fade, records get lost or destroyed as time wears on, and employees get fired, transferred, or quit.  As to the last factor, the public interest lies in the proper resolution of the issues presented in this case. The public interest includes not only the legal issues involved, but also the timely resolution of this case.

The proponent of a stay (*i.e.*, Defendant AAIC) bears the burden of establishing its need.[38] In this case, there is no possible way to assess whether a stay is warranted. The court's power to stay cases before it is not boundless. A stay that is so extensive as to be "immoderate" is an abuse

---

[36] *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[37] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

[38] *Landis*, at 255.

of discretion.[39] The general test for imposing a stay requires the court to "balance interests favoring a stay against interests frustrated by the action" in light of the "court's paramount obligation to exercise jurisdiction timely in cases properly before it."[40] In *Landis*, the court suggests the hardship requirement was aimed at stays causing harm to parties in the stayed suit or others who are not parties in a parallel proceeding:

> True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis*, 299 U.S. at 255. When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay. A stay must not be "immoderate."[41] In considering whether a stay is "immoderate," the court must examine both the scope of the stay (including its potential duration) and the reasons for the stay.[42] As the Supreme Court has explained, "[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."[43] The stay requested by Defendant AAIC in this case is immoderate, uncertain, and conflicts with established Eleventh Circuit precedent. Therefore, Defendant's alternative motion to stay should be denied.

### D.   AAIC'S OFFER OF JUDGMENT DID NOT MOOT PLAINTIFF'S CLAIM

In submitting its offer of judgment, Defendant has undertaken a procedural ploy designed to "pick off" the named plaintiff by offering him the maximum statutory award to which he is

---

[39] *Landis*, at 257.
[40] *Id.*
[41] *CTI–Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir.1982).
[42] *See Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976).
[43] *Landis*, at 257.

entitled under the TCPA.[44] This ploy is designed to "moot" the named plaintiff's claim, or to induce the named plaintiff to abandon the class action mechanism out of fear of potential cost shifting. This ploy is heavily disfavored by the courts and has been judicially discredited because it undermines the important role played by FED. R. CIV. P. 23 and the class action mechanism in aggregating small claims under consumer protection statutes like the TCPA. Finding the class action mechanism is fundamental to obtaining relief provided by such statutes, federal courts have ruled that it is appropriate to strike such offers of judgment, even before they have been filed on the Court docket.

### i.  *Genesis* is Distinguishable and Inapplicable to Rule 23 Class Actions

Defendant's reliance on *Genesis Healthcare Corp. v. Symczyk* is misguided and ignores authority directly on point.[45] Defendant claims the holding in *Genesis* means the rejected offer of judgment made in this case – a Rule 23 class action – moots both the individual claims of plaintiff and the claims of the putative class. Defendant not only omits the key distinguishing facts in *Genesis* – that the underlying case was an FLSA action and not a Rule 23 class action, which are fundamentally different, and the offer was made prior to a motion for class certification – Defendant also misconstrues the effect of a rejected Rule 68 offer on both the individual plaintiff's case and the proposed class' case.

The underlying procedural history in *Stein v. Buccaneers Ltd. Partnership*,[46] is strikingly similar to the present case. In *Stein*, six named plaintiffs filed a TCPA class action against

---

[44] *See Hermida v. Archstone*, 950 F. Supp. 2d 298, 309, n.3 (D. Mass. 2013) ("Involuntary resolution of a case usually arises in a class action scenario where the defendant tries to 'pick off' or 'buy off' class representatives by offering the named plaintiff the entirety of the relief claimed by that individual…The defendant then attempts to obtain dismissal of the action, on the basis that the named plaintiff can no longer pursue a class action, as the named plaintiff is no longer a member of the class the plaintiff sought to represent.").

[45] *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 185 L.Ed.2d 636 (2013).

[46] *Stein v. Buccaneers Ltd. P'Ship*, 772 F.3d 698 (11th Cir. 2014).

Buccaneers Ltd. Partnership ("BLP") for sending unsolicited faxes to the named plaintiffs and the members of the proposed class.[47]  Three days after being served with process, BLP sent all named plaintiffs Rule 68 offers of judgment purporting to fully compensate each plaintiff for the illicit calls.[48] Two days later, BLP moved to dismiss for lack of jurisdiction, asserting the offers rendered the case moot as to the individual plaintiffs and the proposed class.[49]

BLP's motion "stirred the plaintiffs to action…" and prompted them to file what the trial court described as a "terse and admittedly (in fact, purposefully) premature" motion to certify the class.[50]  Just as in the present case, the *Stein* plaintiffs had no time to conduct class discovery and were essentially forced to file a placeholder motion.   Unfortunately, however, the trial court entered an order deeming the individual and class claims moot.[51]  The Eleventh Circuit reversed the trial court, and in the process, provided a deep analysis at to why a rejected Rule 68 offer does not have the effect of erasing all controversy in the case.

The two issues before the court in *Stein* were identical to those in the present case: (1) "whether an individual plaintiff's claim becomes moot when the plaintiff does not accept a Rule 68 offer of judgment that, if accepted would provide all the relief the plaintiff seeks;" and (2) "whether, if the answer is yes and such offers are made to all the named plaintiffs in a proposed class before they move to certify the class, the named plaintiffs may nonetheless go forward a class representatives."[52]   In addressing the first issue, the court stated that dismissing the individual claims on the basis of a rejected Rule 68 offer is "flatly inconsistent with the rule."[53]  In reaching

---

[47] *Id.* at 699.
[48] *Id.*
[49] *Id.* at 701.
[50] *Id.*
[51] *Id*.
[52] *Id*. at 702.
[53] *Id*.

its conclusion, the court first acknowledge that in *Genesis* the Supreme Court was looking at rejected Rule 68 offer solely in the context of a collective action under the FLSA.[54]  Therefore, the majority's holding in *Genesis* has no bearing on Rule 23 class actions.  The *Stein* court also took special care to detail Justice Kagan's rather defiant dissent in *Genesis*, citing as follows:[55]

> That thrice-asserted view [that defendant's offer mooted the plaintiff's individual claim] is wrong, wrong, and wrong again.  We made it clear earlier this Term that '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot…'  A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party…When a plaintiff rejects an offer – however good the terms – her interest in the lawsuit remains just what it was before.  And so too does the court's ability to grant her relief.

Adopting this same logic, the *Stein* court held the plaintiff's individual claims were not moot because the court did not enter judgment for the plaintiffs; even after the offers lapsed and the court dismissed the case, the legal relationship between the named plaintiffs and BLP was precisely the same as before the offers were made (*i.e.,* the named plaintiffs had claims against BLP under the TCPA, and BLP retained all its defenses); no ruling had been made on the validity of the claims; and no judgment had been entered against BLP.[56]  Thus, in the *Stein* court's view, a rejected Rule 68 offer does not moot the individual plaintiff's claims.

On the second issue the *Stein* court held "[e]ven if the individual claims are somehow deemed moot, the class claims remain alive, and the named plaintiffs retain the ability to pursue them."[57]  "What matters is that the named plaintiff acts diligently to pursue the class claims."[58] "Indeed, a motion to certify, without more, does nothing that is significant on this issue…the

---

[54] *Id.*
[55] *Id.* citing *Genesis Healthcare Corp v. Smyczyk*, 133 S. Ct. at 1533-34 (Kagan, J. dissenting).
[56] *Stein v. Buccaneers Ltd. P'Ship*, 772 F.3d at 704.
[57] *Id.*
[58] *Id.* at 707.

motion indicates that the named plaintiff intends to represent a class if allowed to do so, but the complaint itself announces that same intent; the motion is not needed for that purpose."[59]   Thus, the named plaintiff does not need to file a motion for class certification prior to receiving an offer of judgment because the complaint itself is sufficient to express the plaintiff's intent to litigate the case for the class and not solely for the individual herself.   Therefore, an offer to an individual logically does not apply to all the members of the class.

The holding in *Stein*, when applied to this case, defeats Defendant's motion to dismiss. Eleventh Circuit authority is binding on this Court and the *Stein* case is precisely on point.   It provides both a powerful analysis of the effect of offers of judgments and the most current Eleventh Circuit prospective on the issues presently before the Court.

### ii.   Courts Have Routinely Rejected Defendants' Attempts To "Pick-Off" Individual Plaintiffs In A Class Action

The Third Circuit, Fifth Circuit, Ninth Circuit, Tenth Circuit, and Eleventh Circuit have all held, absent undue delay, a Plaintiff may move to certify a class and avoid mootness even *after* receiving an offer of complete relief under Rule 68.[60]   In *Sandoz*, the Fifth Circuit, like the Supreme Court, expressed its concern with the inherent evils in allowing a defendant to "pick off" a class representative with an offer of judgment:

> This Court also has previously discussed the dangers of allowing a defendant to "pick off" class representatives by making an offer of judgment to the named plaintiff:
>
> > By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached. A series of individual suits, each brought by a new

---

[59] *Id.*

[60] *See Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920–21 (5th Cir. 2008); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249–50 (10th Cir. 2011).

named plaintiff, could individually be "picked off" before class
certification…The fact remains that in those cases in which it is financially
feasible to pay off successive named plaintiffs, the defendants would have
the option to preclude a viable class action from ever reaching the
certification stage.

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. Unit A July
1981).[61]

The Third Circuit applied these principles to conclude that "[a]bsent undue
delay in filing a motion for class certification…where a defendant makes a
Rule 68 offer to an individual claim that has the effect of mooting possible
class relief asserted in the complaint, the appropriate course is to relate the
certification motion back to the filing of the class complaint." *Weiss v.
Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004). The court there
recognized that allowing a defendant to moot a representative plaintiff's
claim through a Rule 68 offer of judgment would effectively nullify the
possibility of obtaining class certification. *See id.* at 349. The court also
distinguished between a plaintiff who voluntarily settles a case from a
plaintiff who refuses a defendant's offer of judgment that would fully satisfy
the plaintiff's claim. *See id.* at 349-50. The Third Circuit stated that "relation
back" is more appropriate in the latter setting, as it is the defendant's
unilateral action that rendered the plaintiff's case moot. *See id.* at 350.

*Sandoz*, 553 F.3d at 920–921 (footnotes omitted). In *Sandoz*, the Fifth Circuit held the "relation

back" doctrine can be used to avoid mootness and permit representative actions to play out with

due deliberation by the court on the certification issue. *See Id.*

### iii. A Rule 68 Offer Of Judgment In A Class Action Seriously Undermines The Purpose Of Rule 23

An offer of judgment prior to class certification directed solely at the named plaintiff's

claim and giving the plaintiff all the relief to which the plaintiff could legally be entitled, would

normally moot the named representative's claim and require dismissal of the case.  However, such

an outcome would seriously undermine the purpose of Rule 23, which recognizes "[a] significant

---

[61] As a Fifth Circuit decision issued before October 1, 1981, the decision in *Zeidman* is binding
precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.
1981).

benefit to claimants who choose to litigate their individual claims in a class-action context [by] reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from the recovery,"[62] and "permit[ing] the plaintiffs to pool claims which would be uneconomical to litigate individually."[63]

While Rule 68 works perfectly well in individual actions, the text of the rule does not address or mention class actions or Rule 23, and courts have recognized "its application is strained when an offer of judgment is made to a class representative."[64] A class representative stands in a special relationship to members of the class, and there should be nothing that would cast doubt on the representative's ability to protect the interests of the class.[65] "[B]y the very act of filing a class action, the class representatives assume responsibilities to members of the class."[66]

In *Roper*, the Supreme Court recognized the inherent evils in allowing a defendant to "short circuit" a class action by paying off individual class representatives. In holding the individual class representatives retained an interest in appealing the district court's denial of class certification subsequent to offers of judgment to the named plaintiffs, the Court stated as follows:[67]

> A district court's ruling on the certification issue is often the most significant decision rendered in these class-action proceedings. To deny the right to appeal simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover, it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

---

[62] *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n. 9, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).
[63] *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).
[64] *Weiss v. Regal Collections*, 385 F.3d 337, 344 (3d Cir. 2004).
[65] *See Roper*, 445 U.S. at 331–32; *see also In re Consumers Power Co. Sec. Litigation*, 105 F.R.D. 583, 603 (E.D. Mich. 1985).
[66] *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978) *aff'd sub nom. Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980).
[67] *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. at 339.

Accordingly, courts generally look unfavorably upon this inherently inequitable tactic of "picking-off" representative plaintiffs and routinely have rejected attempts by defendants to subvert a pending class action with an Offer of Judgment. *See, Roper v. Consurve, Inc.*, 578 F.2d at 1110 (5th Cir. 1978) ("notion that a defendant may short-circuit a class action by paying off the class representatives…deserves short shrift"); *Weiss v. Regal Collections*, 385 F.3d 337, 344 (3d Cir. 2004) (allowing a defendant to "pick off" a class representative with an offer of judgment undercuts the viability of the class action procedure); *Greisz v. Household Bank, N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) (Rule 68 Offer of Judgment to a representative plaintiff "is precluded by the fact that before the class is certified, which is to say at a time when there are many potential party plaintiffs to the suit, an offer to one is not an offer of the entire relief sought by the suit…"(emphasis in original)); *Alpern v. Utilicorop United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996) ("Judgment should be entered against a putative class representative on a defendant's offer of judgment only where class certification has been properly denied and the offer satisfies the representative's responsibilities to the putative class members from being terminated by a defendant's attempts to pay off the representative's claims." (citations omitted)).[68]

---

[68] *See also, Zeigenfuse v. Apex Asset Mgmt., L.L.C.*, 239 F.R.D. 400, 401 (E.D. Pa. 2006) ("If an offer of judgment to a putative class representative were allowed to stand, it would be an easy way for a defendant to thwart a class action which may be the only viable means of obtaining relief for the class members who individually may have claims too small to sue on their own."); *Martin v. Mabus*, 734 F. Supp. 1216, 1222 (S.D. Miss. 1990) ("procedures prescribed by Rule 68 for making an offer of judgment are literally inapplicable because Rule 23(e) requires that court approval be obtained in order for a case to be dismissed or compromised"); *Smith v. NCO Financial Systems, Inc.*, 257 F.R.D. 429, 434 (E.D. Pa. 2009) ("Rule 68 was not meant to test the strength of a plaintiff's motion for class certification. It seems that if Plaintiff were to consider Defendants' amended offer of judgment, the determinative factor will be whether she believes the Court will certify a class action, not whether she will succeed on the merits of her claims. Hence, because Defendants' amended offer of judgment contravenes not only the class action mechanism but also Congressional intent under the FDCPA, the Court will grant Plaintiff's Motion to strike Defendants' amended offer of judgment.").

## IV.    CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Justin Mark Boise respectfully requests this Court (1) deny Defendant's 12(b)(1) motion to dismiss; (2) deny Defendant's alternative motion to stay; and (3) grant Plaintiff and the putative class all other relief to which they may be entitled, at law or in equity.

Respectfully Submitted,


*/s/  Benjamin H. Crumley*
Benjamin H. Crumley, Esq.
ben@cwbfl.com
Florida Bar No. 18284
**CRUMLEY & WOLFE, PA**
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113

W. Craft Hughes (*pro hac vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (*pro hac vice*)
jarrett@hughesellzey.com
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056
Phone (713) 554-2377
Facsimile (888) 995-3335

ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS

## **CERTIFICATE OF SERVICE**

I certify a copy of the foregoing document was electronically filed in accordance with the protocols for e-filing in the United States District Court for the Southern District of Florida, Miami Division, on June 15, 2015, and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.

Daniel Cruz
dcruz@brownsims.com
BROWN SIMS
9130 South Dadeland Blvd., Suite 1600
Miami, FL 33156
Phone (305) 274-5507
Fax (305) 274-5517

Matthew D. Ingber
mingber@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Phone (212) 506-2500
Fax (212) 262-1910

Archis A. Parasharami
aparasharami@mayerbrown.com
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20006
Phone (202) 263-3000
Fax (202) 263-3300


            */s/ Benjamin Crumley*
Benjamin Crumley