**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 15-21264-Civ-COOKE/TORRES**

JUSTIN MARK BOISE, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

ACE AMERICAN INSURANCE COMPANY and ACE USA, INC.,

*Defendants*. /

# PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN INCENTIVE AWARD

COMES NOW Justin Mark Boise ("Plaintiff"), individually and on behalf of all others similarly situated, and files this Motion for Attorneys' Fees, Expenses, and an Incentive Award.

W. Craft Hughes (*pro hac vice*)
Jarrett L. Ellzey (*pro hac vice*)
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056
Phone (713) 554-2377
Facsimile (888) 995-3335

Benjamin H. Crumley, Esq.
Florida Bar No. 18284
**CRUMLEY & WOLFE, PA**
2254 Riverside Avenue
Jacksonville, FL 32204
Phone (904) 374-0111
Facsimile (904) 374-0113

ATTORNEYS FOR PLAINTIFF
AND THE CLASS

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................ 1

II. ARGUMENT AND AUTHORITIES ........................................ 2

A. This Court Should Approve Class Counsel's Request For An Award Of Attorneys' Fees ........................................ 2

B. The *Johnson* Factors Support Class Counsel's Request For An Award Of Attorneys' Fees ........................................ 3

1. Class Counsel Obtained an Excellent Result ........................................ 4

2. The Time and Labor Required to Resolve This Matter Was Significant ........................................ 6

3. The Questions Underlying This Matter Were Both Difficult and Novel ........................................ 8

4. Class Counsel Relied on Particular Skill and Experience in Performing the Legal Services Required ........................................ 9

5. The Time Spent on This Matter Limited Counsel's Ability to Work on Other Matters ........................................ 10

6. The Award Requested Here Is on Par with Awards in Similar TCPA Settlements ........................................ 10

7. Class Counsel Litigated This Matter on a Contingent Basis ........................................ 12

8. This Matter Was Undesirable to Many Attorneys ........................................ 13

C. Additional Factors Support Class Counsel's Request For An Award Of Attorneys' Fees Equal To 30% Of The Common Fund ........................................ 13

III. This Court Should Approve Class Counsel's Request for An Incentive Award to Boise In the Amount of $10,000 ........................................ 15

IV. This Court Should Approve Class Counsel's Request for Reimbursement of Litigation Costs and Expenses ........................................ 17

V. CONCLUSION & PRAYER ........................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) ............ 11, 13, 14, 16

*Allen v. JPMorgan ACE Bank, N.A.*,
No. 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) ............ 11

*Balthazor v. Central Credit Servs., Inc.*,
2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) ............ 9

*Been v. O.K. Indus., Inc.*,
2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) ............ 13

*Behrens v. Wometco Enters, Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ............ 12

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla 1988) ............ 17

*Blum v. Stenson*,
465 U.S. 886 (1984) ............ 2

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............ 2

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) ............ 4, 6

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ............ 2, 3

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
No. 1:07-cv-5456, Dkt. No. 424 (N.D. Ill. Oct. 21, 2011) ............ 12

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) ............ passim

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ............ 9

*Cox v. Sprint Commc'ns Co. L.P.*,
2012 WL 5512381 (D. Kan. Nov. 14, 2012) ............ 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ........ 17

*Cross v. Wells Fargo Bank, N.A.*,
2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ........ 5

*Cross v. Wells Fargo Bank, N.A.*,
No. 2:15-cv-01270-RWS, ECF No. 103 (N.D. Ga. Feb. 10, 2017) ........ 16

*Cummings v. Sallie Mae*,
No. 1:12-cv-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) ........ 11

*Desai v. ADT Sec. Servs., Inc.*,
No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) ........ 11

*Duke v. Bank of Am., N.A.*,
No. 5:12-cv-04009-EJD (N.D. Cal.) ........ 5

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) ........ 11

*Gutter v. E.I. Dupont De Nemours & Co.*,
No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) ........ 11

*Hadix v. Johnson*,
322 F.3d 895 (6th Cir. 2003) ........ 15

*Hageman v. AT&T Mobility LLC, et al.*,
No. 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) ........ 11

*Hanley v. Fifth Third Bank*,
No. 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) ........ 11

*Holtzman v. CCH*,
No. 1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) ........ 12

*Ikuseghan v. Multicare Health Sys.*,
2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ........ 11

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........ 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ........ 4

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)........ 17

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)........ 17

*In re Thornburg Mortg., Inc. Sec. Litig.*,
912 F. Supp. 2d 1178 (D.N.M. 2012)........ 13

*In re: Managed Care Litig. v. Aetna*,
2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ........ 11

*In re: Terazosin Hydrochloride Antitrust Litig.*,
No. 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) ........ 11

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ........ 16

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ........ 3, 4

*Jones v. I.Q. Data Int'l, Inc.*,
2015 WL 5704016 (D.N.M. Sept. 23, 2015)........ 16

*Locklear Elec., Inc. v. Norma L. Lay*,
No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010)........ 11

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
2010 WL 5387559 (D. Colo. Dec. 22, 2010) ........ 10

*Luster v. Wells Fargo Dealer Servs., Inc.*,
No. 1:15-cv-01058-TWT, ECF No. 60 (N.D. Ga. Feb. 23, 2017)........ 5

*Markos v. Wells Fargo Bank, N.A.*,
2016 WL 4708028 (N.D. Ga. Sept. 7, 2016)........ 5

*Markos v. Wells Fargo Bank, N.A.*,
2017 WL 416425 (N.D. Ga. Jan. 30, 2017)........ 6, 11, 16

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Martin v. Dun & Bradstreet, Inc. et al*,
No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) ........ 11

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ........ 2, 4

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
311 F.R.D. 688 (S.D. Fla. 2015) ........ 6

*Picchi v. World Fin. Network Bank*,
No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) ........ 5

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ........ 4

*Prater v. Medicredit, Inc.*,
2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ........ 11, 16

*Prather v. Wells Fargo Bank, N.A.*,
2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ........ 5

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) ........ 12, 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........ 15

*Schwyhart v. AmSher Collection Servs., Inc.*,
2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ........ 11, 16

*Shamblin v. Obama for Am.*,
2015 WL 1909765 (M.D. Fla. Apr. 27, 2015) ........ 9

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
279 F.R.D. 442 (N.D. Ohio 2012) ........ 6

*Soto v. The Gallup Org.*,
No. 13-cv-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) ........ 11

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........ 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*St. Louis Heart Center, Inc. v. Vein Ctrs. for Excellence, Inc.*,
2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) .......... 6

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
9 F.3d 849 (10th Cir. 1993) .......... 4

*Vendervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) .......... 11

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) .......... 10

*Wilkins v. HSBC Bank Nev., N.A.*,
2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .......... 5

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) .......... 3

**Statutes**

47 U.S.C. § 227(b)(1)(A) .......... 8

**Rules**

FED. R. CIV. P. 23 .......... 14, 17

FED. R. CIV. P. 23(e) .......... 2

**Other Authorities**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.) .......... 5

John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review (1983) .......... 14

# I. INTRODUCTION

For their efforts over the past two years to secure the settlement presented—which resulted in Ace American Insurance Company and ACE USA, Inc. (collectively, "ACE" or "Defendants") agreeing to pay $9.76 Million into a non-reversionary settlement fund for the benefit of 983,527 consumers nationwide—class counsel seek an award of attorneys' fees amounting to 30% of the settlement fund, plus reimbursement of their reasonable litigation costs and expenses, and an incentive award in the amount of $10,000 to the class representative Justin Mark Boise ("Boise"). *See* Doc. 71-1 at §§ 2.47, 4.01 ("Settlement Agreement"). The present Settlement will provide almost 67,000 people in the Class with real monetary relief—an estimated $95.13 per person after deducting attorney's fees, costs, and expenses. *See* Declaration of W. Craft Hughes, ¶ 27, attached as Exhibit A.

This Court preliminarily approved this Settlement on April 26, 2017. *See* Doc. 77 (Order Granting Preliminary Approval). A final fairness hearing is scheduled for October 4, 2017 at 10:00am. *See* Doc. 82 (Order Revising Settlement Scheduling Order). Class counsel's requests are reasonable, justified, and in line with awards approved in analogous TCPA class actions. *See* Ex. A, ¶¶ 76, 79. Moreover, no person has objected to Class Counsel's request for attorneys' fees, costs, expenses, or incentive award after almost six-weeks of notice to class members.[1] *Id.*, at ¶ 80. Almost one million class members received direct mail notice of this Settlement, and only one person has submitted an objection[2] – to "punitive damages" – and only eleven people have

---

[1] The class notice period began June 23, 2017 and specifically informed class members that class counsel would seek an award of attorneys' fees not to exceed thirty percent of the settlement fund, plus reimbursement of litigation costs and expenses. The notices also stated Boise would seek an incentive award not to exceed $10,000. *See* Direct Mail Notice (Doc. 71-3) and Long Form Notice (Doc. 71-5); *see also* www.acetcpasettlement.com.

[2] The *pro se* objection to "punitive damages" does not apply in this case (Doc. 83).

excluded themselves from the settlement as of July 31, 2017.

## II. ARGUMENT AND AUTHORITIES

### A. THIS COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit agrees: "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (citing Fed. R. Civ. P. 23(e)).

To that end, the Supreme Court acknowledged that "common fund fee awards should be computed as a fair percentage of the fund." *Id.* at 774 (citing *Blum v. Stenson*, 465 U.S. 886, 900 (1984)); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 689 (M.D. Ala. 1988) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund bases."). And with reference not only to *Blum*, but to other decisions endorsing a percentage-of-the-fund calculation, the Eleventh Circuit stated: "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* (rejecting the use of lodestar analysis for determination of fees in common fund cases); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008 WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("Since 1991, the Eleventh Circuit has required district courts in this circuit to follow the 'percentage of the fund' approach to awarding fees in class action cases.").

"[T]here is[, however,] no hard and fast rule mandating a certain percentage of a common

fund which may reasonably be awarded as a fee[.]" *Id*. Rather, "the amount of any fee must be determined upon the facts of each case." *Id*. To make this determination, "the *Johnson* factors [may be] appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I Condo. Ass'n, Inc*., 946 F.2 at 775. In addition, other factors such as "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action," are also pertinent. *Id*.

Against this backdrop, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Wreyford v. Citizens for Transp. Mobility, Inc*., No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014). Here, class counsel requests an award of attorneys' fees equal to 30% of the common fund.

### B. THE *JOHNSON* FACTORS SUPPORT CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES

While "factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary," *Camden I Condo. Ass'n, Inc*., 946 F.2 at 775, "the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Id*. at 775; *see also Columbus Drywall & Insulation, Inc*., 2008 WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("In deciding what percentage of the fund to award, the court may consider the twelve factors in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)).

The *Johnson* factors are the amount involved and the results obtained; the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service

properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717-19. However, the *Johnson* factors were developed in the statutory fee context, and "the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988). Moreover, "[r]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

**1. Class Counsel Obtained an Excellent Result**

"The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 693 (M.D. Ala. 1988) ("The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."); *accord Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award.").

Here, in the face of many significant legal hurdles discussed *infra*, *see* Argument § (II)(B)(3), class counsel obtained an excellent result for Class Members. *See* Ex. A, ¶¶ 75, 79. From the outset, the non-reversionary cash settlement fund, which totals $9.76 Million, is noteworthy. *Id.*, at ¶ 76. This alone is significant, considering the changing legal landscape in

which class counsel litigated this matter. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.). As well, the settlement compares favorably, on a per-class member basis (calculated by dividing the total settlement fund by the number of potential class members), to similar TCPA class action settlements against financial institutions. Indeed, dividing the $9.76 Million fund by 983,527 class members yields more than $9.92 per person. *Compare with, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 1:15-cv-04231-SCJ, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 1:15-cv-01058-TWT, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *Cross v. Wells Fargo Bank, N.A.*, Case 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-01156-LMM, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) ($2.63 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009-EJD (N.D. Cal.) ($4.15 per class member).

Also important, the settlement here provides almost 67,000 people in the Class with real monetary relief—an estimated $95.13 per person after deducting all settlement fees and costs,[3] despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D.

---

[3] A total of 66,959 timely claims have been received as of July 31, 2017; and the current claim rate is almost 7%. After deduction of all fees, costs, settlement administration expenses, and incentive award, the common fund totals approximately $6,370,285.74 for payments of all claims received from class members.

688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Center, Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). This means that because of the settlement at hand more than 66,000 consumers nationwide will receive significant cash relief of approximately $95.00 they otherwise would likely never have pursued on their own.

In sum, the settlement here represents an objectively excellent recovery for the class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—significantly less than what participating Class Members will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *see also* Ex. A, ¶¶ 75, 79.

### 2. The Time and Labor Required to Resolve This Matter Was Significant

Although the time and labor required "is an essential touchstone for recovery in a statutory fee case where reasonableness is measured in part by reference to the lodestar analysis," *Brown*, 838 F.2d at 456, in a common fund case "the amount involved … and the results obtained may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id*. In other words, the "'time and labor involved' factor need not be evaluated using

the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Id.*

Nonetheless, class counsel spent significant time on this matter. *See* Ex. A, ¶¶ 30-31, 49, 57, 63, 67, 74, 84. This case has been pending for more than two years, and involved motion practice, electronic discovery, numerous third-party subpoenas for document production, filing a separate third-party lawsuit in Texas to obtain crucial documents from Nationstar Mortgage, LLC, a trip to New York for the rule 30(b)(6) deposition of ACE's corporate representative, and two formal mediations in Chicago, Illinois before the parties reached a settlement. *Id.*; *see also* 1st and 2nd Mediation Reports of Hon. Wayne Anderson (Ret.) (Doc. 50 and 58).

More specifically, class counsel devoted significant time and resources to this case, including: (a) conducting an investigation into the underlying facts regarding Plaintiffs' claims and Class Members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to the claims and ACE's defenses; (d) preparing and serving initial written discovery requests, negotiating ACE's discovery responses and production of documents, and gathering documents and information relevant to ACE's discovery requests to Plaintiffs; (e) researching and opposing ACE's motion to stay; (f) researching ACE's motion for protective order; (g) researching issues related to class certification, including strategies for how to best satisfy the requirements of Rule 23; (h) preparing for and attending two mediations in Chicago, Illinois before Hon. Wayne Anderson (Ret.) which included drafting detailed mediation statements; (i) assisting with the preparation of the parties' class action settlement agreement, along with the proposed class notices, claim forms, and settlement website; (j) preparing Plaintiffs' motion for preliminary approval of the class action settlement; (k) conducting discovery from ACE and third-parties to verify the methodology for identifying potential class members; (l) preparing Plaintiffs' motion for final

approval of the class action settlement; (m) preparing the instant motion for approval of an award of attorneys' fees, reimbursement of expenses, and incentive awards; (n) preparing a detailed declaration in support of settlement approval; (o) conferring with the class administrator to oversee the notice, claims, and administration process; (p) repeatedly conferring with Boise throughout this case; and (q) conferring with class members to answer questions about the settlement process. *See* Ex. A, ¶¶ 27-87.

Class counsel's time and labor involved in reaching the ultimate conclusion to this matter was therefore substantial, and supports the attorneys' fee award that class counsel requests.

**3. The Questions Underlying This Matter Were Both Difficult and Novel**

This matter involved many legal questions, most of which were difficult, and several of which were novel. This is evidenced, if by nothing more, than the numerous motions filed by ACE seeking a dismissal of this case. *See* Doc. 29 (motion to dismiss and alternative motion to stay, May 29, 2015); Doc. 35 (reply in support of motion to dismiss, June 25, 2015); Doc. 42 (renewed motion to dismiss, July 21, 2016); Doc. 48 (reply in support of renewed motion to dismiss, August 15, 2016); *see also* Ex. A, ¶¶ 32, 34, 38, 46, 51.

Indeed, ACE made a host of arguments that the value of Class Members' claims should be severely discounted, if not eliminated entirely. For example, during the time of this litigation and ongoing settlement negotiations, the Supreme Court had yet to issue a ruling in *Spokeo v. Robins*, No. 13-1339, on the question of whether the alleged violation of a federal statute, without anything more, confers Article III standing. *See* Ex. A, ¶¶ 40, 42.

Also at the time of the settlement, the D.C. Circuit Court of Appeals was weighing a consolidated appeal of the Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order")—an action that remains pending today. And an

adverse ruling by the D.C. Circuit could have profoundly negative consequences for Plaintiffs' claims.

Arguing in favor of mitigation of any damages, ACE also contended that it maintains robust safeguards to ensure compliance with the TCPA. While ACE vehemently disputes any liability, to the extent any violations did occur, ACE would argue that any violation of the TCPA was unintentional and would not support increased statutory damages. *See* Ex. A, ¶¶ 32, 34, 38, 46, 51.

Finally, Plaintiffs faced significant risks in obtaining class certification. *Id.*, at ¶¶ 9, 32, 34-36, 38, 40, 46, 48, 51. Specifically, ACE was likely to assert that the class would not be ascertainable, and that individual issues predominated over common questions of law and fact. Notably, some courts in the Eleventh Circuit have refused to certify contested TCPA class actions, making the likelihood of certification here uncertain. *See, e.g.*, *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *8 (M.D. Fla. Apr. 27, 2015); *Balthazor v. Central Credit Servs., Inc.*, No. 07-61822, 2012 WL 6725872, at *3-4 (S.D. Fla. Dec. 27, 2012). And this uncertainty is compounded by the fact that the Eleventh Circuit has not issued a published opinion on the issue of ascertainability in consumer protection class actions. In short, many of the issues underlying this matter involve difficult and unsettled legal questions, which are at the forefront of class action, constitutional, and consumer protection law, further underscoring the value of the services provided by class counsel.

#### 4. Class Counsel Relied on Particular Skill and Experience in Performing the Legal Services Required

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (internal citation omitted). Here, Plaintiff's counsel at Hughes Ellzey, LLP—who have been appointed class counsel in a host of

class actions under the TCPA—relied on their particular skill in litigating and negotiating the settlement. *See* Ex. A, ¶¶ 9-26. Class counsel's substantial experience and skill support the requested fee award. *Id.*

**5. The Time Spent on This Matter Limited Counsel's Ability to Work on Other Matters**

"[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *2. This is the case here, as class counsel have expended a significant amount of time to ultimately obtain the results they achieved for the class. *See* Ex. A, ¶¶ 30-31, 49, 57, 63, 67, 74, 84; *accord Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time."). From inception of this matter through settlement, the two named partners at Hughes Ellzey undertook all litigation tasks in this case against a formidable opponent, the international law firm of Mayer Brown.

**6. The Award Requested Here Is on Par with Awards in Similar TCPA Settlements**

"Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011). Class counsel's request for an award of attorneys' fees in the amount of 30% of the $9.76 Million common fund, therefore, is well within the range of fee awards affirmed by the Eleventh Circuit and approved by district courts within it. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of one-third of a $40

Million settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3% of $1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of one-third of settlement fund of over $30 Million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement fund of $100 Million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding fees of one-third of settlement fund of $77.5 Million).

Importantly, this analysis does not differ when limited to TCPA class actions. *See, e.g.*, *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-1175-JEO, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) (awarding attorneys' fees of one-third of the settlement fund, plus the reimbursement of litigation expenses); *Markos*, 2017 WL 416425, at *3 (awarding attorneys' fees amounting to 30% of the common fund because "the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the work performed by Class Counsel."); *Soto v. The Gallup Org.*, No. 13-cv-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) (awarding fee of one-third of settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) (same).[4] Class counsel's

[4] *See also, e.g.*, *Ikuseghan v. Multicare Health Sys.*, No. C14-5539, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30%, plus costs); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third, plus costs); *Allen v. JPMorgan ACE Bank, N.A.*, No. 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33%); *Hageman v. AT&T Mobility LLC, et al.*, No. 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) (awarding 33%); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than one-third); *Cummings v. Sallie Mae*, No. 1:12-cv-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) (awarding 33%); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (awarding 33%); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (awarding 33%); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) (awarding one-third); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, Dkt. No. 424 (N.D. Ill.

request, therefore, comports with customary fee awards in similar cases. *See* Ex. A, ¶ 76.

**7. Class Counsel Litigated This Matter on a Contingent Basis**

"Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *3 (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)). This is, in part, because even in ordinary cases "uncertain is the outcome," *id.*, and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Id.*

With this in mind, the Southern District of Florida observed:

> A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) (internal citation omitted).

Here, Plaintiff entered into a contingent attorneys' fee agreement with his counsel. *See* Ex. A, ¶ 84. In particular, the agreement permitted class counsel to apply for an award of attorneys' fees in the event that a common fund was established for the benefit of the class. *Id*. Of note, the agreement also states that class counsel would seek no more than 35% of the common fund as compensation for work performed in connection with this matter. *Id*. Thus, that the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon … law

---

Oct. 21, 2011) (awarding 33%); *Holtzman v. CCH*, No. 1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33%).

practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1215 ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent."); *accord Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

#### 8. This Matter Was Undesirable to Many Attorneys

That class counsel worked for over two years to ultimately obtain the settlement—with no payment during that time and no guarantee of success—makes this matter undesirable to many. *See Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *4 (explaining that the prospect of expending significant time and money with no assurance of payment, to litigate a case against well-represented defendants, would deter many lawyers from assuming representation).

So although class counsel ultimately obtained a result that any attorney should be proud of, the road leading to a resolution here was paved with large quantities of time, uncertainty, risk, and expenses that would deter many attorneys from accepting this matter. *See* Ex. A, ¶¶ 30, 49, 57, 63, 67, 74, 84. And this is especially true given the high quality of legal representation that ACE obtained from Mayer Brown LLP in this matter.

### C. Additional Factors Support Class Counsel's Request For An Award Of Attorneys' Fees Equal To 30% Of The Common Fund

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217. This is particularly important here, where, as previously noted, *see supra*, Argument § (II)(B)(1), damage awards under the TCPA—a statute that does not include a fee-shifting

provision—are often too small to incentivize individual actions. And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a … factor when awarding class counsel attorneys' fees." *Id*. (citing *Ressler*, 149 F.R.D. at 657 (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions")).

The public policy fostered by the private attorney general role is, however, frustrated where a large defendant (such as ACE) has the ability to overwhelm the small-firm plaintiff lawyers (like Hughes Ellzey) who typically represent consumers in actions under the TCPA. *See* Ex. A, ¶ 9. This is a reality that results from the fact that, as noted above, *see supra*, Argument § (II)(B)(7), class counsel were required to risk a significant amount of time, for over two years, as well as out-of-pocket costs and expenses, to reach the result obtained here. *Id*., at ¶¶ 84. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.

Accordingly, a contingent attorneys' fee award that amounts to 30% or more of the common fund is appropriate where "absent an award of [such fees] … the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self interest rather than obtaining real justice on behalf of their injured clients." *Id*. at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review, 216, 225-26 (1983) (the

private attorney general provides an important mechanism "to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies," but in the absence of appropriate incentive structures, "litigated judgments are few, cheap settlements are common, and … the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement")).

With this is mind, and considering the unique circumstances of this matter—the lack of incentive for aggrieved consumers to bring individual suits, that ACE unquestionably is a large defendant with substantial means, and that ACE employs excellent legal counsel—class counsel's request for attorneys' fees is supported by the economics involved in litigating this matter. *See* Ex. A, ¶¶ 75-84.

As of July 31, 2017, pursuant to a robust notice program, no Class Members have objected to any relevant aspect of the settlement,[5] including the requested attorneys' fees and expenses. *Id.*, at ¶ 80. This is significant, as the absence of a large number of objections strongly indicates that an attorneys' fee award equal to 30% of the common fund is fair and reasonable. *See Cox v. Sprint Commc'ns Co. L.P.*, No. 6:10-CV-01262-KGG, 2012 WL 5512381, at *4 (D. Kan. Nov. 14, 2012) ("The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

## III. This Court Should Approve Class Counsel's Request for An Incentive Award to Boise In the Amount of $10,000

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)

[5] The *pro se* objection to "punitive damages" does not apply in this case (Doc. 83).

(explaining that "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit," and noting that "[n]umerous courts have authorized incentive awards"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("[Courts] routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *Allapattah Servs.*, 454 F. Supp. 2d at 1218 ("Incentive awards are not uncommon in class litigation where, as here, a common fund has been created for the benefit of the class.").

Here, Boise took critical steps to protect the interests of the class, and he spent considerable time pursuing his claims on behalf of the class. *See* Ex. A, ¶¶ 88-96. In particular, Boise frequently communicated with class counsel by telephone and e-mail. He kept himself apprised of this matter by reading documents filed with this Court, and approving drafts before filing. *Id*. Boise also put the interests of the class above his own financial well-being in rejecting two separate Rule 68 Offers of Judgment from ACE. *Id*.

Also considerable, class counsel's request for an incentive award to Boise in the amount of $10,000 is in line with—and in many cases significantly less than—incentive awards that courts have approved in comparable TCPA matters. *See, e.g.*, *Markos*, 2017 WL 416425, at *3 (approving incentive awards of $20,000 each in TCPA class action); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from $1 Million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award in TCPA class action); *Cross v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01270-RWS, ECF No. 103 (N.D. Ga. Feb. 10, 2017) (approving incentive award of $15,000 to TCPA class representative); *Schwyhart*, 2017 WL 1034201 (approving $10,000 incentive award to class representative in TCPA class action); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at

*6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative).

This Court, therefore, should approve class counsel's request for an incentive award to Boise in the amount of $10,000.

## IV. This Court Should Approve Class Counsel's Request for Reimbursement of Litigation Costs and Expenses

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of … reasonable litigation expenses from that fund." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003). Here, class counsel incurred reasonable costs and expenses totaling $151,714.26 in connection with this matter, including fees from a crucial expert witness who submitted a written expert report, travel expenses, mediation costs, filing and court admission fees, and other necessary expenses. *See* Ex. A, ¶¶ 84-87.

Importantly, the categories of expenses for which class counsel seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla 1988) ("In addition, plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action. In summary, these expenses include the necessary costs associated with any action: travel, depositions, filing fees, postage, telephone, and copying. The costs paid by the plaintiff's counsel for these expenses is fair and reasonable.") (internal citation omitted).

Here, class counsel seeks the reimbursement of $151,714.26 in litigation costs and expenses, including fees from a crucial expert witness who submitted a written expert report. *See* Ex. B (copies of paid invoices documenting reimbursable litigation costs and expenses); *see also* Ex. A, ¶ 85. These expenses are eminently reasonable in a class action like this, spanning more than two years, and were necessary to the successful prosecution of this action. Noteworthy, and as with class counsel's requests for an award of attorneys' fees and an incentive award to Boise, no class members have objected to counsel's request for reimbursement of litigation costs and expenses to date.

## V. CONCLUSION & PRAYER

Class counsel respectfully request that this Court grant their unopposed requests for an award of attorneys' fees in an amount equal to 30% of the common fund, as well as reimbursement of litigation costs and expenses in the amount of $151,714.26, and for an incentive award to Boise in the amount of $10,000. A proposed order is attached as Exhibit C.

Respectfully Submitted,

*/s/ W. Craft Hughes*

W. Craft Hughes (*pro hac vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (*pro hac vice*)
jarrett@hughesellzey.com
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056
Phone (713) 554-2377
Facsimile (888) 995-3335

Benjamin H. Crumley, Esq.
ben@cwbfl.com
Florida Bar No. 18284
**CRUMLEY & WOLFE, PA**
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113

ATTORNEYS FOR PLAINTIFF
AND THE CLASS

**CERTIFICATE OF SERVICE**

I certify a copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system in accordance with the protocols for e-filing in the United States District Court for the Southern District of Florida, Miami Division, on August 3, 2017, and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.

*/s/ W. Craft Hughes*
W. Craft Hughes