**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 15-21264-Civ-COOKE/TORRES**

JUSTIN MARK BOISE, individually and on
behalf of all others similarly situated,

       *Plaintiff*,

v.

ACE AMERICAN INSURANCE COMPANY
and ACE USA, INC.,

       *Defendants*.                    /

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

      COMES NOW Justin Mark Boise ("Plaintiff"), individually and on behalf of all others

similarly situated, and files this Unopposed Motion for Final Approval of Class Action Settlement

and Incorporated Memorandum in Support.

      W. Craft Hughes (*pro hac vice*)
      Jarrett L. Ellzey (*pro hac vice*)
      **HUGHES ELLZEY, LLP**
      2700 Post Oak Blvd., Suite 1120
      Houston, TX 77056
      Phone (713) 554-2377
      Facsimile (888) 995-3335

      Benjamin H. Crumley, Esq.
      Florida Bar No. 18284
      **CRUMLEY & WOLFE, PA**
      2254 Riverside Avenue
      Jacksonville, FL 32204
      Phone (904) 374-0111
      Facsimile (904) 374-0113

      ATTORNEYS FOR PLAINTIFF
      AND THE CLASS

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  SUMMARY OF THE LITIGATION, MEDIATIONS, AND SETTLEMENT ................. 2

   A.  The Settlement Class ..........................................................................................3

   B.  Settlement Fund and Notice................................................................................4

   C.  Release ................................................................................................................4

III. THE NOTICE PROVIDED SATISFIES RULE 23 AND DUE PROCESS ...................... 5

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE............................. 7

   A.  The Settlement Agreement Is the Result of Arm's Length Negotiations
       Between the Parties with the Assistance of an Experienced Mediator......................9

   B.  The Settlement Agreement Is Fair, Reasonable, and Adequate
       Under the Eleventh Circuit's *Bennett* Factors ...........................................................10

       1.  Likelihood of success at trial........................................................................ 11

       2.  The range of possible recovery and the range of
           fair, reasonable, and adequate recovery ......................................................... 13

       3.  The complexity and expense of future litigation........................................... 16

       4.  Substance and amount of opposition to settlement ...................................... 18

       5.  Stage of proceedings at which settlement was achieved............................... 19

V.   REQUEST FOR APPELLATE BOND ........................................................................ 20

VI.  CERTIFICATE PURSUANT TO LOCAL RULE 7.1 .................................................... 20

VII. CONCLUSION ........................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Access Now, Inc. v. Claire's Stores, Inc.,*
    2002 WL 1162422 (S.D. Fla. May 7, 2002) ........................................................................ 19

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
    No. 3:08-cv-00248 (S.D. Cal. Sept. 28, 2012) .................................................................. 15

*Adams v. S. Farm Bureau Life Ins. Co.,*
    493 F.3d 1276 (11th Cir. 2007) ........................................................................................... 5

*Agne v. Papa John's Int'l, et al.,*
    No. 2:10-cv-01139 (W.D. Wash. Oct. 22, 2013) ............................................................... 15

*Allapattah Servs., Inc. v. Exxon Corp.,*
    2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ..................................................................... 18

*Anchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................................................... 12

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................................ 16

*Bellows v. NCO Fin. Sys., Inc.,*
    No. 3:07-cv-01413 (S.D. Cal. Dec. 23, 2008) .................................................................. 15

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984) ............................................................................................. 8

*Campbell-Ewald Co. v. Gomez,*
    136 S. Ct. 663 (2016) .......................................................................................................... 3

*Clark v. Payless ShoeSource, Inc.,*
    2:09-cv-00915 (W.D. Wash. July 27, 2012) ..................................................................... 15

*Conigliaro v. Norwegian Cruise Line Ltd.,*
    2006 WL 7346844 (S.D. Fla. Sept. 1, 2006) .................................................................... 11

*Connor v. JPMorgan Chase Bank, N.A.,*
    No. 10-cv-01284 (S.D. Cal. Feb. 5, 2015) ........................................................................ 15

*Cubbage v. The Talbots, Inc. et al.,*
    No. 2:09-cv-00911 (W.D. Wash. Nov. 6, 2012) ............................................................... 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ........................................................................ 11, 12

*Desai v. ADT Sec. Sys.*,
No. 1:11-cv-01925 (N.D. Ill. June 21, 2013).......................................................... 15

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ........................................................................ 5

*Figueroa v. Sharper Image Co.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................................ 14

*Garret, et al. v. Sharps Compliance, Inc.*,
No. 1:10-cv-04030 (N.D. Ill. Nov. 5, 2012) .......................................................... 15

*Gascho v. Global Fitness Holdings, LLC*,
2014 WL 1350509 (S.D. Ohio Apr. 4, 2014),
*aff'd*, 822 F.3d 269 (6th Cir. 2016).................................................................. 6

*Gene & Gene LLC v. BioPay, LLC*,
541 F.3d 318 (5th Cir. 2008) ........................................................................ 12

*Gordon v. Hunt*,
117 F.R.D. 58 (S.D.N.Y. 1987) ...................................................................... 6

*Hovila v. Tween Brands, Inc.*,
No. 2:09-cv-00491 (W.D. Wash. April 25, 2012) ..................................................... 15

*In re Capital One TCPA Litig.*,
No. 12-cv-10064 (MDL No. 2416) (N.D. Ill. 2015)..................................................... 15

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011)..................................................................... 9

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................... 8

*In re CP Ships Ltd. Sec. Litig*,
578 F. 3d 1306 (11th Cir. 2009) ..................................................................... 5

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ..................................................................... 8

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**<u>Page(s)</u>**

*In re Enhanced Recovery Co.*,
    No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014)......................................................... 15

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013).......................................................................................... 6

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)........................................................................................... 6

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
    No. 3:11-MD-02261 (S.D. Cal. Feb. 21, 2013) ................................................................ 15

*In re Polyurethane Foam Antitrust Litig.*,
    2016 U.S. Dist. LEXIS 49592 (N.D. Ohio Apr. 13, 2016)................................................... 20

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ...................................................................................... 17

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................................... 13, 19

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ......................................................................................... 7

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................................... 9

*Jamison v. First Credit Servs. Inc.*,
    2013 WL 3872171 (N.D. Ill. July 29, 2013) .................................................................... 12

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) .................................................................................... 5, 6

*Kazemi v. Payless ShoeSource, Inc.*,
    No. 3:09-cv-05142 (N.D. Cal. April 2, 2012) .................................................................. 15

*Kreger v. Medicredit, Inc.*,
    2016 WL 3906960 (M.D. Fla. July 19, 2016) .................................................................... 7

*Kwan v. Clearwire Corp.*,
    No. 2:09-cv-01392 (W.D. Wash. May 7, 2013) ................................................................ 16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lemieux v. Global Credit & Collection Corp.*,
    No. 3:08-cv-01012 (S.D. Cal. Sept. 20, 2011) ...................................................... 16

*Leyse v. Lifetime Enter. Servs.*,
    2015 WL 5837897 (S.D.N.Y. Sept. 22, 2015),
    *aff'd*, 679 F. App'x 44 (2d Cir. 2017) ................................................................... 12

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........................................................... passim

*Malta v. Fed. Home Mortg. Corp.*,
    2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ............................................................. 6

*Malta v. Freddie Mac & Wells Fargo Home Mortg.*,
    No. 3:10-cv-01290 (S.D. Cal. June 21, 2013) ...................................................... 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ............................................................................................... 5

*Newman v. Sun Capital Corp., Inc.*,
    2012 WL 3715150 (M.D. Fla. Aug. 28, 2012) ...................................................... 11

*Paldo Sign and Display Co. v. Topsail Sportswear*,
    No. 1:08-cv-05959 (N.D. Ill. Dec. 22, 2011) ...................................................... 15

*Perez v. Asurion Co.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................. 10, 16, 17, 19

*Rose v. Bank of Am. Corp.*,
    2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................................................... 15

*Sarabi v. Weltman, Weinberg & Reis Co.*,
    No. 3:10-cv-01777 (S.D. Cal. Feb. 15, 2013) ...................................................... 16

*Spillman v. RPM Pizza, LLC*,
    No. 3:10-cv-00349 (M.D. La. July 29, 2013) ...................................................... 15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................. 1, 3, 11, 19

*Steinfeld v. Discover Fin. Sers.*,
    No. 12-cv-01118 (N.D. Cal. March 31, 2014) ................................................. 15, 16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
    485 U.S. 478 (1988) .................................................................................................... 6

*United States. v. Alabama*,
    271 F. App'x 896 (11th Cir. 2008) ............................................................................ 5

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
    271 F.R.D. 668 (D. Wyo. 2011) ............................................................................... 17

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) ............................................................................... 17

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) ........................... 8

*Wojcik v. Buffalo Bills, Inc.*,
    No. 8:12-cv-02414 (M.D. Fla. Aug. 25, 2014) ........................................................ 16

*Zik v. Gascho*,
    137 S. Ct. 1065 (2017) ............................................................................................... 6

**Statutes**

47 U.S.C. § 227 .................................................................................................................... 1

47 U.S.C. § 227(b)(3)(B) .................................................................................................... 14

47 U.S.C. § 227(c)(5)(B) .................................................................................................... 14

**Rules**

FED. R. CIV. P. 23(c)(2)(B) ................................................................................................. 5

FED. R. CIV. P. 23(e)(2) ...................................................................................................... 7

FED. R. CIV. P. 23(g) .......................................................................................................... 10

FED. R. CIV. P. 30(b)(6) ...................................................................................................... 10

**Other Authorities**

*Newberg on Class Actions*,
    § 11.41 (4th ed. 2002) ............................................................................................ 8, 9

## I.    INTRODUCTION

Plaintiff Justin Mark Boise respectfully moves for final approval of the Stipulation and Agreement of Settlement (ECF No. 71-1) (the "Settlement Agreement")[1] with Defendant ACE American Insurance Company ("ACE"), which was granted preliminary approval by this Court on April 26, 2017, resolving claims asserted under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* ECF No. 77.

After contentious litigation and two mediation sessions under the guidance of the Honorable Wayne R. Andersen (Ret.), an experienced mediator, the parties reached an agreement to resolve the claims against ACE on a class-wide basis in a settlement that provides substantial monetary relief to the class with a common fund of $9,760,000, none of which will revert to ACE. This Settlement Fund will be used to provide the exclusive recovery and relief for the Class, any reasonable attorneys' fees and costs approved and awarded by the Court to Class Counsel, any incentive award approved and awarded by the Court to Mr. Boise, and the costs of notice and settlement administration.  As of the date of this filing, at least 107,981 total claim forms have been submitted.[2]  The settlement is expected to provide each Settlement Class Member who submitted a timely, valid Claim Form with a payment of at least $55—the current estimate is $59.

These payments represent a substantial benefit to the class, particularly in light of the risks inherent to litigation and the various defenses available to ACE.  In litigating this case, ACE has argued that central issues include whether Plaintiff or the class members have Article III standing under the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and whether

---

[1]   Capitalized terms in this memorandum have the same meaning as specified in the Settlement Agreement.  The Plaintiff has submitted a proposed order attached hereto as <u>Exhibit 2</u>.

[2]   As of this date, the Settlement Administrator is reviewing additional, timely Claims Notices, and so this number may increase.

a class could be certified on a litigated basis in light of individualized inquiries into a number of factual questions that would be required to adjudicate Plaintiff's claims. While Plaintiff and his counsel have a different view, they recognized the possibility that the Court (or appellate courts) would accept ACE's arguments. Against this backdrop, the parties negotiated the class settlement that this Court preliminarily approved.

The required Class Action Fairness Act ("CAFA") notice was sent to 65 Attorneys General and governmental legal officers and, per the Court-approved notice plan, direct-mail notice of the settlement was sent to the Settlement Class, and the settlement was also published in media outlets. *See* Declaration of Jay Geraci, attached as <u>Exhibit 1</u> ("Geraci Decl."). Many of the Class Members also received mailed notice of the settlement, and the Settlement Administrator maintained a website and a toll-free number that tens of thousands of individuals accessed. Geraci Decl. at ¶¶ 7-9, 12-13. It is likely because of the substantial benefit achieved that there have been ***no objections*** to the substance of the settlement. The solitary objection, asserted by a professional objector, challenges the proposed attorneys' fees; it does not challenge the fairness or adequacy of the Settlement Agreement itself. *See* ECF No. 87.[3] Moreover, there have been only thirty-eight requests for exclusion—a miniscule fraction of the class. *See* Geraci Decl. at ¶ 15. These figures further confirm that the settlement is fair, reasonable, and adequate. Accordingly, the Court should grant final approval of the settlement.

## II.     SUMMARY OF THE LITIGATION, MEDIATIONS, AND SETTLEMENT

On April 1, 2015, Plaintiff Justin Mark Boise filed a class action complaint, alleging that ACE was responsible for telemarketing calls to consumers in violation of the TCPA. The parties

---

[3] As the Settlement Agreement provides (ECF No. 71-1, § 5.03), a challenge to attorneys' fees does not affect whether the settlement itself may be approved.

then engaged in contested litigation for nearly two years, including extensive motions practice, written discovery, and third-party subpoenas.  The parties initially briefed ACE's motion to dismiss, or in the alternative, to stay the action (ECF No. 29) and Plaintiff's motion for class certification (ECF No. 26), and the Court stayed the action pending the Supreme Court's adjudication of *Spokeo* and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).  Once the Supreme Court issued its decisions in those cases, ACE filed a renewed motion to dismiss (ECF No. 42), asserting that under *Spokeo*, Plaintiff's complaint should be dismissed because he did not allege a sufficiently concrete injury-in-fact for standing under Article III of the United States Constitution.

While that motion was pending, the parties mediated before the Hon. Wayne R. Andersen, a retired judge of the U.S. District Court for the Northern District of Illinois.  The first mediation took place on October 20, 2016.  Although this session did not immediately result in a settlement, the parties agreed to a second mediation session on November 29, 2016.  The parties made progress in the second mediation session, and ultimately, after further negotiations facilitated by Judge Andersen, the parties agreed to settle the claims against ACE on a class-wide basis.  The Court granted preliminary approval of the settlement on April 26, 2017.  *See* ECF No. 77.

A.    THE SETTLEMENT CLASS

This Court provisionally certified the following settlement class:

> All individuals in the United States who are or were customers of Nationstar Mortgage or BB&T Bank, on or after October 16, 2013 who: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

> The following are excluded from the Settlement Class: (1) any judge that may preside over the case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers,

directors, agents, servants or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely submitted a Request for Exclusion by the Opt-Out Deadline; (6) any person or entity who has previously given a valid release of the claims asserted in the Action; and (7) Plaintiff's Counsel and their employees.

*See* ECF No. 77, at 2-3.

### B.   SETTLEMENT FUND AND NOTICE

The proposed settlement obligates ACE to establish a settlement fund of $9.76 million. *See* Settlement Agreement ¶ 4.01. If the settlement is approved, the total amount distributed to the Settlement Class includes the Settlement Fund and any interest accrued, less the amount awarded by the Court for Attorney's Fees and Costs to Class Counsel, the Incentive Award to Mr. Boise, and the Settlement Administration Costs. The remainder of the Settlement Fund will be distributed to the Settlement Class to each class member on a *pro rata* basis. If the class member fails to negotiate his or her Benefit Check within 180 days, the amount left over from such unclaimed Benefit Checks will be distributed to the class members who cashed their initial Benefit Checks (if feasible). If that is not feasible, this remaining amount will be awarded to a *cy pres* designated recipient, which will be one or more nonprofit organizations mutually agreed upon by the Parties and approved and appointed by the Court. *See generally* Settlement Agreement ¶ 4.02.

### C.   RELEASE

In exchange for the benefits of the settlement, Plaintiff has agreed to dismiss this litigation with prejudice. Plaintiff and all members of the Settlement Class (other than the thirty-eight individuals who timely opted out) will release all of their claims that arise out of or relate in any way to ACE, or any of its agents, from initiating telephone calls to Settlement Class Members during the Class Period, including all TCPA claims and all state law claims arising out of the alleged making of telephone calls.

**III.     THE NOTICE PROVIDED SATISFIES RULE 23 AND DUE PROCESS**

Federal Rule of Civil Procedure 23 requires a court to direct to class members "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B).  Notice of a class settlement is adequate if it is reasonably calculated under the circumstances to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *See United States. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig*, 578 F. 3d 1306, 1314 (11th Cir. 2009) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)), *abrogated on other grounds*, *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).

Significantly, neither Rule 23 nor Due Process mandate actual notice—or any particular form of notice—to all class members. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).  In determining the sufficiency of the class notice, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901 (quoting *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007)).  Moreover, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (quotation marks omitted).

This Court previously reviewed and approved the notice plan that the parties proposed. The Settlement Administrator has executed that plan.  First, the Settlement Administrator mailed the notice form approved by the Court to the Settlement Class members for whom address information was available. *See* Geraci Decl. at ¶¶ 7-9. If an initial notice was returned as

undeliverable, the administrator re-mailed that notice to class members when able to locate additional addresses by searching through credit bureau and/or other public source databases. *Id*. The direct mailed notice consisted of a postcard that contained a summary description of the Settlement Agreement, identified the Settlement Administrator, and asked recipients to review the Settlement Website to obtain additional information about the settlement. *Id*. That notice by mail satisfies Due Process. *See, e.g.*, *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.").[4]

Second, because the Parties have diligently investigated and determined that neither BB&T Bank nor ACE has name, telephone number, and address information for potential class members who are or were customers of BB&T Bank, the Settlement Administrator published notices of the settlement in *People Magazine* and *USA Today*, two widely read nationwide publications. *See Juris*, 685 F.3d at 1319 (approving of notice by publication in *USA Today* and *People Magazine*; recognizing that "[w]here certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate"). As the Eleventh Circuit has held, "[t]his combination of mailed notice to all class members who can be notified by reasonable effort and published notice to all others is the long-accepted norm in class actions." *Id*. at 1321 (quoting *Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987)); *accord, e.g.*, *Kreger v.*

---

[4] Numerous courts have approved mailing summary notices to class members. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *6-7, *29 (S.D. Ohio Apr. 4, 2014) (finally approving settlement with postcard notice sent to majority of class), *aff'd*, 822 F.3d 269 (6th Cir. 2016), *cert. denied sub nom. Zik v. Gascho*, 137 S. Ct. 1065 (2017); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving settlement with postcard notice); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (finally approving settlement with postcard notice); *Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619, at *11 (S.D. Cal. Feb. 5, 2013) (preliminarily approving settlement with postcard-type notice).

*Medicredit, Inc.*, 2016 WL 3906960, at *2-3 (M.D. Fla. July 19, 2016) (approving of publication notice in TCPA case).

Third, the Settlement Administrator established and maintained a website dedicated to the settlement to provide information to the Class Members and to answer frequently asked questions. The website URL was set forth in the Web Notice, Spanish Web Notice, Summary Notice Postcard with Detachable Claim Form, and Claim Form. Visitors to the website were also able to download copies of the Web Notice, Spanish Web Notice, Claim Form, and other case-related documents. The website also allowed visitors to submit claims online.  As of the date of this filing, the website received 147,258 visits. *See* Geraci Decl. at ¶ 12.

Fourth, the Settlement Administrator, working with the parties' counsel, established and maintained a toll-free number to answer questions about the settlement and to allow class members to obtain more information about the settlement. As of the date of this filing, the Settlement Administrator has received a total of 15,992 calls. *See* Geraci Decl. at ¶ 13. These multiple channels afforded the Settlement Class ample notice, allowing class members the opportunity to exercise their rights to file claims, opt out, or object.

In sum, the notice plan approved by the Court, which was executed in accordance with the Court's directives, satisfies Rule 23 and Due Process considerations. Both in its design and implementation, the class notice plan supports final approval of the settlement.

## IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A court may approve a class action settlement if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).   Judicial and public policy favor the voluntary settlement of class action litigation.  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Warren v. City of Tampa*,c693 F. Supp.

1051, 1054 (M.D. Fla. 1988) ("[S]ettlements are highly favored in the law."), *aff'd*, 893 F.2d 347 (11th Cir. 1989); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). With a settlement, the class members are ensured the ability to secure a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

With an eye towards this policy in favor of settlement, a court may approve a class action settlement if it "is fair, adequate, and reasonable, and not the product of collusion." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quotation marks and citation omitted); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1344 (S.D. Fla. 2011) (Ultimately, "[a] settlement is fair, reasonable, and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'") (citation omitted).

The Eleventh Circuit has explained that, in determining whether a settlement is "fair, adequate, and reasonable," courts should consider the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. The Settlement Agreement here easily satisfies these standards. It is the product of arm's length, informed negotiation between the parties, and the *Bennett* factors point in favor of approval.

A.   THE SETTLEMENT AGREEMENT IS THE RESULT OF ARM'S LENGTH NEGOTIATIONS BETWEEN THE PARTIES WITH THE ASSISTANCE OF AN EXPERIENCED MEDIATOR

The factual circumstances that led to the Settlement Agreement demonstrate that it was the result of arm's length and informed negotiations among the parties.  As a leading treatise on class actions has summarized:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> * * *
>
> The initial presumption of fairness of a class settlement may be established by showing that: (i) the settlement has been arrived at by arm's-length bargaining;
>
> (ii) sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and]
>
> (iii) the proponents of the settlement are counsel experienced in similar litigation.

*Newberg on Class Actions*, § 11:41, 92-93 (4th ed. 2002). These factors are all met here.

First, the terms of the Settlement Agreement were reached only through arm's length negotiations over the course of several months following two mediation sessions with the Hon. Wayne R. Andersen (Ret.) of JAMS.  ECF No. 77 at 1-2; *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator). The parties also submitted detailed

mediation submissions to Judge Andersen. The settlement discussions were hard fought, extensive, and adversarial.

Second, the Settlement Agreement was reached after extensive discovery. Class Counsel issued multiple rounds of requests for production, interrogatories, and requests for admission to plaintiffs, in addition to a FED. R. CIV. P. 30(b)(6) deposition notice to ACE. Additionally, the parties issued multiple third-party subpoenas.  Finally, thousands of pages of documents were produced as a result of these discovery requests. *See* Prelim. Approval Mem. (ECF No. 71).  Given the procedural status of the lawsuit and the time invested in its prosecution and defense, the parties have a solid grasp of the respective strengths and weaknesses of their positions.

Third, counsel for proponents of the settlement are highly experienced in class action litigation, especially class action litigation under the TCPA (Prelim. Approval Mem.), who had at their disposal ample information about the facts of the case to evaluate the terms of any proposed agreement, so as to reach a fair compromise.  Indeed, in its Order Granting Preliminary Approval, this Court has already "recognize[d] the experience of Class Counsel and [found] under Fed. R. Civ. P. 23(g) that the requirement of adequate representation of the Settlement Class has been fully met." ECF No. 77, at 3-4. Accordingly, the Settlement Agreement is the result of arm's length and informed negotiation between the parties, not collusion.

## B.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE ELEVENTH CIRCUIT'S *BENNETT* FACTORS

The Agreement also readily passes muster under the *Bennett* factors. "In evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own

judgment for that of counsel.'" *Id.* As explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement here.

### 1.    Likelihood of success at trial

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). Uncertainty of success at trial weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp., Inc.*, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012).

To begin with, Plaintiff faced the risk of dismissal based on ACE's renewed motion to dismiss for lack of subject matter jurisdiction under *Spokeo*. ECF No. 42.  Central issues in this case included whether the Plaintiff satisfies the requirements for Article III standing and whether class certification would be appropriate on a litigated basis.  ACE has maintained that the Supreme Court's decision in *Spokeo*, which held that "Article III standing requires a concrete injury even in the context of a statutory violation," calls into question Plaintiff's ability to obtain standing to pursue his claims. *Spokeo*, 136 S. Ct. at 1548-49. ACE has further argued that Plaintiff does not claim any economic or other tangible or intangible injury as a result of the calls placed by ACE.

Moreover, ACE has maintained that even if Plaintiff himself has alleged a concrete injury, *Spokeo* still creates a significant hurdle for Plaintiff to overcome in representing a putative class. As courts in this Circuit have observed, "no class may be certified that contains members lacking Article III standing." *Conigliaro v. Norwegian Cruise Line Ltd.*, 2006 WL 7346844, at *3 (S.D. Fla. Sept. 1, 2006) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 262 (2d Cir. 2006)). Thus, it is not enough that Plaintiff himself may have standing. *Conigliaro*, 2006 WL 7346844, at *3 n.4

("Therefore, the class must be defined in such a way that *anyone* within it would satisfy standing.") (quoting *Denney*, 443 F.3d at 264) (emphasis added); *see also Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (noting that the Court is "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints . . . .").

ACE has also taken the position that class certification on a litigated basis would require individualized inquiries into a number of factual questions, including: whether a putative class member's number was listed on the National Do Not Call Registry; whether a putative class member actually experienced receiving a call; and whether a putative class member actually suffered concrete harm.  It is true that many TCPA class actions have been certified; but courts in other litigated cases have often denied certification. *See Gene & Gene LLC v. BioPay, LLC*, 541 F.3d 318, 326-29 (5th Cir. 2008) (denying certification of a TCPA class where common issues did not predominate over individualized issues of consent); *Jamison v. First Credit Servs. Inc.*, 2013 WL 3872171, at *4-5 (N.D. Ill. July 29, 2013) (same; denying motion for reconsideration); *Leyse v. Lifetime Enter. Servs.*, 2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015) (denying class certification in TCPA case on ascertainability grounds), *aff'd*, 679 F. App'x 44 (2d Cir. 2017)); *see generally* Prelim. Approval Mem. 7-9.

Here, the calls at issue involved landline telephones rather than cellular telephones.  ACE could be expected to argue that landline telephone call recipients would not have suffered any economic harm because individuals do not normally incur incremental costs for receipt of a call on their landline phones. Furthermore, ACE would contend that a putative class member whose landline phone rang—but who was not home to hear it—could not have been affected by the call in any way, much less suffered the "concrete injury" required by Article III.  Had the parties been unable to settle this case, ACE would have argued that large numbers of calls made in the relevant

telemarketing campaigns went unanswered—and thus, in ACE's view, were unlikely to have caused any concrete harm.  At a minimum, ACE would have contended, there would have been no way to make that determination without an individualized investigation into the circumstances of each call. If the Court had agreed, that argument would have presented a substantial roadblock to class certification.

To be sure, Plaintiff has maintained throughout this case that ACE breached the TCPA with respect to certain marketing calls it placed to Plaintiff and members of the proposed class. Plaintiff has also maintained throughout that issues common to the class predominate over individualized issues, and the analysis of law and fact would be uniform for all class members. Plaintiff has further contended that Plaintiff (as well as each member of the class) suffered injuries related to invasions of privacy rights such that he has Article III standing to bring this suit.  While Plaintiff and his counsel disagree with ACE's arguments and believe class certification would be appropriate, they are aware of the possibility that a court would accept ACE's arguments and either grant ACE's motion to dismiss or deny Plaintiff's motion for class certification.

Plaintiff and his counsel are further aware of the uncertainty and expense of continuing to litigate this case further, and, as in any case, the substantial risk of losing at trial.  And even if Plaintiff did prevail, any recovery could be delayed for years by an appeal.  In contrast, the Settlement Agreement provides substantial monetary relief to Settlement Class Members without further delay. Because of these risks, the first *Bennett* factor favors approval of the settlement.

2.      **The range of possible recovery and the range of fair, reasonable, and adequate recovery**

Analysis of the second and third *Bennett* factors—the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable—are often combined. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001).  As in most litigation, "[t]he

range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (quoting *Lipuma*, 406 F. Supp. 2d at 1322).   However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id.*

The monetary relief secured on behalf of the Class is well within the range of what is fair, adequate, and reasonable for a TCPA settlement of this magnitude. Each Class Member submitting a timely and valid claim will receive their pro rata share of the remaining Settlement Fund, after deducting any reasonable attorneys' fees and costs approved and awarded by the Court to Plaintiff's Counsel, any incentive awards approved and awarded by the Court to Mr. Boise, and the costs of notice and settlement administration. As notice was mailed to nearly one million potential class members and others received notice through publication notice, and over 110,000 claims forms have been submitted to the Settlement Administrator, at least 108,000 class members are set to receive their *pro rata* share of approximately $6.3 million (ECF No. 84, at 5 & n.3), or approximately $55-59 per class member.

Moreover, the Settlement Agreement's terms are also fair, reasonable, and adequate when compared to other TCPA class settlements.  For the types of TCPA violations alleged here, the statute provides a potential recovery for each violation of "up to" $500—*i.e.*, a range from $1 to $500 (and up to $1,500 for each willful violation). *See* 47 U.S.C. § 227(c)(5)(B). (Other types of TCPA violations, by contrast, provide for a fixed recovery of $500 per violation, or $1,500 per willful violation. *See id.* § 227(b)(3)(B).) Therefore, a $55 or $59 award for each class member represents a potentially greater recovery than what each class member could have received after trial.

Also, the risk of losing at trial, or even prior to trial, often results in TCPA litigants settling for relatively low awards per class member. Factoring in that risk in settlement necessitates a discounted recovery.  Indeed, many courts have approved settlements providing a lower per-class member benefit—and many of these cases involved alleged violations of the provisions of the TCPA providing for a fixed recovery rather than a range, as here. *See, e.g.*, *Connor v. JPMorgan Chase Bank, N.A.*, No. 10-cv-01284 (S.D. Cal. Feb. 5, 2015) (granting final approval to a settlement paying $11,268,058 on slightly less than 2.5 million accounts) (ECF No. 160); *In re Capital One TCPA Litig.*, No. 12-cv-10064 (MDL No. 2416) (N.D. Ill. 2015) (ECF No. 329) (final approval granted where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Steinfeld v. Discover Fin. Sers.*, No. 12-cv-01118 (N.D. Cal.) (ECF Nos. 96 and 97) (final approval of $46.98 per claimant); *In re Enhanced Recovery Co.*, No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) (ECF Nos. 123 and 124) (only injunctive relief for class).  Other examples abound of approved TCPA settlements conferring a potential per-class-member benefit less than or on par with the settlement here.[5]

---

[5] *See, e.g.*, *Spillman v. RPM Pizza, LLC*, No. 3:10-cv-00349 (M.D. La. July 29, 2013) (ECF Nos. 244 and 245) ($15 recovery per claimant); *Desai v. ADT Sec. Sys.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (ECF Nos. 240 and 243) ($47 recovery per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030 (N.D. Ill. Nov. 5, 2012) (ECF No. 74) ($28.13 recovery per claimant); *Paldo Sign and Display Co. v. Topsail Sportswear*, No. 1:08-cv-05959 (N.D. Ill. Dec. 22, 2011) (ECF No. 116) ($42 recovery per fax); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248 (S.D. Cal. Sept. 28, 2012) (ECF Nos. 116 and 137) ($40 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139 (W.D. Wash. Oct. 22, 2013) (ECF No. 389) ($50 recovery plus $13 merchandise per claimant); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413 (S.D. Cal. Dec. 23, 2008) (ECF No. 38 at 6) ($70 recovery per claimant); *Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash. July 27, 2012) (ECF Nos. 61 and 72) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911 (W.D. Wash. Nov. 6, 2012) (ECF No. 114, ¶ 11) ($40 or $80 merchandise certificate per claimant); *Hovila v. Tween Brands, Inc.*, No. 2:09-cv-00491 (W.D. Wash. April 25, 2012) (ECF No. 141) ($20 or $45 merchandise certificate); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261 (S.D. Cal. Feb. 21, 2013) (ECF Nos. 90-1 and 97) ($15 per claimant); *Kazemi v. Payless ShoeSource, Inc.*, No. 3:09-cv-05142 (N.D. Cal. April 2, 2012) (ECF No. 94, ¶ 10) ($15 merchandise certificate); *Kwan v. Clearwire Corp.*, No. 2:09-cv-

Finally, the Settlement Fund is non-reversionary, ensuring that all monetary benefits will go to Settlement Class Members or (if checks are not cashed) to *cy pres*—nothing will return to ACE.

Because the settlement will give participating class members benefits that are similar to or greater than those provided in other TCPA class action settlements, the second and third *Bennett* factors support final approval.

### 3.    The complexity and expense of future litigation

The next factor is the complexity and expense of further litigation.  In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *Lipuma*, 406 F. Supp. 2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381 (quoting *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 543 (S.D. Fla. 1988)).

In agreeing to a Settlement Fund of $9,760,000, Plaintiff and Class Counsel considered the risks inherent to this litigation and the various defenses available to ACE.  In particular, Plaintiff recognized that there is no guarantee of success at trial, and Plaintiff and the Class Members face substantial challenges, escalating costs, and significant delay if the litigation were to continue.  *See* pages 11-13, *supra*; Prelim. Approval Mem. 7-9.

---

01392 (W.D. Wash. May 7, 2013) (ECF No. 201) ($53 per call); *Lemieux v. Global Credit & Collection Corp.*, No. 3:08-cv-01012 (S.D. Cal. Sept. 20, 2011) (ECF No. 46, at 4) ($70 recovery per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mortg.*, No. 3:10-cv-01290 (S.D. Cal. June 21, 2013) (ECF No. 91 at 5) ($85 recovery per claimant); *Sarabi v. Weltman, Weinberg & Reis Co.*, No. 3:10-cv-01777 (S.D. Cal. Feb. 15, 2013) (ECF No. 42 at 6) ($48 recovery per claimant); *Steinfeld*, No. 3:12-cv-01118 (N.D. Cal. March 31, 2014) (ECF Nos. 96 and 97) ($47 recovery per claimant); *Wojcik v. Buffalo Bills, Inc.*, No. 8:12-cv-02414 (M.D. Fla. Aug. 25, 2014) (ECF No. 77 at 5 and 79) ($58-$75 recovery per claimant).

---

The expense and complexity of further litigation would thus be substantial.  It would require additional fact and expert discovery, pre-trial motion practice including motions for summary judgment, and conducting a trial.

Plaintiff also recognized that class certification is not guaranteed or automatic in TCPA cases.  *See* discussion of complications to class certification on pages 11-13, *supra*; *see also e.g.*, *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (citations omitted).

Moreover, if the parties proceeded with litigation and the Court were to grant or deny class certification or grant summary judgment in either party's favor, then the losing side would likely seek relief from the Eleventh Circuit.  In either event, continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources.  When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush."  *Lipuma*, 406 F. Supp. 2d at 1323, *quoting In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").  In sum, the complexity, expense, and duration of litigation in the future in the absence of settlement favors the approval of this settlement.

### 4.      Substance and amount of opposition to settlement

The settlement in this case has been met with virtually no substantive opposition, further demonstrating that its terms are fair, adequate, and reasonable. Here, only thirty-eight class members requested exclusion, and just one class member objected. *See* Geraci Decl. at ¶¶ 15-16. The sole objection (filed by Freddie L. Glover, who is represented by a professional objector) focuses on the amount of attorneys' fees Class Counsel seeks, rather than to the adequacy or fairness of the settlement itself. *See* ECF No. 87. This objection should have no effect on this Court's approval of the settlement:  the settlement "is not dependent or conditioned upon the Court's approving Plaintiff's and/or Class Counsel's requests for [attorneys' fees, costs, and incentive award] for such payments or awarding the particular amount sought by Plaintiff and/or Class Counsel. In the event the Court declines Plaintiff's and/or Class Counsel's requests or awards less than the amounts sought, this Settlement will continue to be effective and enforceable by the Parties." Settlement Agreement § 5.03.  In any event, Class Counsel's request for Attorneys' Fees and Costs is reasonable and in line with other requests for attorneys' fees in similar TCPA actions. *See* ECF No. 91, at 14-16.

The fact that there is only one objection, considering the comprehensive notice provided to the class, demonstrates that class members find the agreement reasonable and fair, which strongly favors final approval. *See Lipuma*, 406 F. Supp. 2d at 1324 ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").  The vast disparity between the number of potential class members who received notice of the settlement and the number of objectors creates a strong

presumption that this factor weighs in favor of the settlement, and the Objector's arguments otherwise are not convincing.

### 5.    Stage of proceedings at which settlement was achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved.  This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp. 2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof. This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.").

Here, the Settlement Agreement was not reached until after meaningful motion practice had taken place—including a post-*Spokeo* motion to dismiss for lack of standing.  In addition, there was substantial discovery, including requests for production of documents, interrogatories, requests for admission, multiple third-party subpoenas, and ACE's document production of over 6,000 pages.  This extensive discovery ensured that Class Counsel had sufficient information about the allegations of the complaint, the size of the Settlement Class, and the range of the Settlement Class's potential damages.  Thus, by the time the Settlement Agreement was reached, Class Counsel had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of the Agreement against continued litigation. The fact that this case was clearly ripe for settlement thus weighs in favor of approval as well.

## V.      REQUEST FOR APPELLATE BOND

If history is a predictor of the future, one might expect objector Freddie Glover ("Objector") and attorney Christopher Bandas to pursue an appeal if the Settlement is approved by the Court. In that event, Class Counsel respectfully requests an appeal bond be required sufficient to protect the interests of the Class, including compensation for the time value of money, as the Settlement funds are held by defendant ACE pending distribution and thus the Class would receive no interest or compensation for risk of nonpayment attendant to the resulting delay. *See, e.g., In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 U.S. Dist. LEXIS 49592, at *24-26 (N.D. Ohio Apr. 13, 2016) (ordering $145,463, which included attorneys' fees and "lost interest") (citing cases).

## VI.     CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Prior to filing the instant Motion, Plaintiff's undersigned counsel avers he conferred with Defendant's counsel pursuant to Local Rule 7.1 and is authorized to represent that Defendant does not oppose the relief sought in this motion.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court enter an order granting final approval to this Settlement.

Respectfully Submitted,


      */s/ W. Craft Hughes*
W. Craft Hughes (*pro hac vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (*pro hac vice*)
jarrett@hughesellzey.com
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056
Phone (713) 554-2377
Facsimile (888) 995-3335


Benjamin H. Crumley, Esq.
ben@cwbfl.com
Florida Bar No. 18284
**CRUMLEY & WOLFE, PA**
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113

ATTORNEYS FOR PLAINTIFF
AND THE CLASS

<u>**CERTIFICATE OF SERVICE**</u>

I certify a copy of the foregoing document was electronically filed with the Clerk of this

Court using the CM/ECF system in accordance with the protocols for e-filing in the United States

District Court for the Southern District of Florida, Miami Division, on <u>September 20, 2017</u>, and

will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.


_____*/s/ W. Craft Hughes*_____
W. Craft Hughes